CC-2001-179                                             1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Ahorro y Crédito Oriental<br><br>   Demandante-Peticionario<br><br>v.<br><br>David Oquendo Camacho y su esposa Aida Iris García Ortiz, etc.<br>   Demandados-Recurridos<br><br>v.<br><br>Cooperativa de Seguros de Vida<br>   Tercera demandada-recurrida | Certiorari<br><br>2003 TSPR 26<br><br>158 DPR \_\_\_\_ |

Número del Caso: CC-2001-179

Fecha: 28 de febrero de 2003

Tribunal de Circuito de Apelaciones:
                        Circuito Regional VI

Juez Ponente:
                        Hon. Carmen Ana Pesante Martínez

Abogado de la Parte Demandante-Peticionaria:
                        Lcdo. Julio L. Castro Velázquez

Abogado de la Parte Demandada-Recurrida:
                        Lcdo. Ángel L. Díaz Palenque

Abogado de la Parte Tercera demandada-recurrida
                        Lcdo. Alfredo Castro Mesa

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Ahorro y
Crédito Oriental
  Demandante-Peticionario

    v.

David Oquendo Camacho y su
esposa Aida Iris García Ortiz
y la Sociedad de Bienes     CC-2001-179   Certiorari
Gananciales formada por ambos
  Demandados-Recurridos

    v.

Cooperativa de Seguros de Vida
  Tercera demandada-
  recurrida

**Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton**

San Juan, Puerto Rico, a 28 de febrero de 2003.

**¿Es una aseguradora de una póliza grupal de seguro de crédito por incapacidad responsable de los pagos al asegurado más allá del término del contrato cuando la incapacidad surgió durante su vigencia? Tanto el Tribunal de Primera Instancia como el Tribunal de Circuito de Apelaciones limitaron el alcance de la cubierta al término del contrato y la Cooperativa de Ahorro y Crédito Oriental recurrió ante nos y sostiene que la póliza cubría los pagos por el término en que se había comprometido la aseguradora cuando la incapacidad ocurriere**

mientras estaba vigente el seguro de crédito.   Tienen razón.  Revocamos

I

El 2 de octubre de 1991, la Cooperativa de Seguros de Vida (en adelante COSVI) expidió la póliza grupal de seguro colectivo de crédito de incapacidad total a favor de la Cooperativa de Ahorro y Crédito Oriental (en adelante, la Cooperativa) para asegurar las cuentas de los deudores de préstamos hipotecarios que, debido a una incapacidad sobrevenida durante la vigencia de la póliza, no pudiesen cumplir con su obligación para con la Cooperativa. Esta póliza se renovaba anualmente, a una prima mensual de doscientos tres dólares con cincuenta centavos ($203.50) y el pago debía ser satisfecho por la Cooperativa.

Según los términos de la misma, cuando el deudor asegurado sufriera una incapacidad, COSVI pagaría a la Cooperativa la mensualidad que el asegurado se obligó a pagar a ésta "en concepto de: principal, intereses y otros depósitos en plica ("escrow items")".[1] La póliza garantizaba hasta un máximo de sesenta meses por pagos de incapacidad, siempre y cuando la incapacidad fuera sobrevenida antes de los cincuenta y cinco años de edad.[2]  Los beneficios por incapacidad eran pagaderos al tenedor de la misma, en este caso la Cooperativa, quién también era responsable del pago de sus primas.

---

[1] Póliza 99-21, pág, 3.
[2] Id. Pág. 5.

El 18 de octubre de 1994, la Cooperativa aprobó un préstamo hipotecario por treinta mil dólares ($30,000.00) al 9.375% de interés a favor de David Oquendo, su esposa Aida I. García y la sociedad de gananciales compuesta por ambos.  La Sra. García se acogió a la Póliza de Seguro Colectivo de Crédito de Incapacidad expedida por COSVI asegurando, de esta forma, el crédito de la Cooperativa en caso de que le sobreviniera una incapacidad que le impidiera cumplir con los pagos mensuales. Según la póliza, en aquellos casos en donde exista más de un deudor responsable del pago de la hipoteca, se consideraría asegurada a una sola de estas personas para los fines de la misma.  Esta persona sería identificada por la Cooperativa en el momento en que el seguro fuese efectivo y sería aquella sobre cuyo crédito y firma el tenedor de la póliza descansare o confiare para el pago de la deuda.[3] En este caso, la Sra. García fue seleccionada como la deudora asegurada por la póliza.

En enero de 1997, la Sra. García se incapacitó.  Para éste momento, la póliza aún estaba vigente.  Según surge de la propia contestación a la demanda contra tercero, COSVI admite que la Sra. García reclamó los beneficios por incapacidad el 26 de febrero de 1997, un mes después de la lesión. Sin embargo, dichos beneficios no fueron pagados por la aseguradora por el fundamento de que la Sra. García no estaba incapacitada.  No obstante, la Sra. García

---

[3] Id. Pág. 3.

continuó con los pagos mensuales de su préstamo hipotecario por los próximos dos meses hasta que su situación económica le impidió continuar con los mismos.

Por su parte, la Cooperativa continuó haciendo los pagos de las primas de la póliza de incapacidad hasta el mes de septiembre. Sin embargo, en el momento en que correspondía la renovación de la póliza, la Cooperativa le informó a COSVI que debido a que los pagos del préstamo estaban atrasados, ésta no pagaría la prima del seguro por incapacidad, ni renovaría la misma.

Así las cosas, un año después del surgimiento de la incapacidad, la Cooperativa declaró el préstamo vencido y presentó una demanda de ejecución de hipoteca contra el matrimonio Oquendo-García. El matrimonio, a su vez, presentó una demanda contra tercero en contra de COSVI. El matrimonio adujo que COSVI era responsable por la suma adeudada a la Cooperativa en virtud del seguro por incapacidad que les asistía debido a la incapacidad permanente sufrida por la Sra. García en enero de 1997.

En su contestación a la demanda, COSVI alegó que la Cooperativa no había pagado las primas correspondientes a la renovación de la póliza por lo que la Sra. García no estaba, luego del mes de septiembre de 1997, cubierta por póliza alguna. COSVI consignó en el tribunal las mensualidades correspondientes a los meses entre febrero y septiembre de 1997, por entender que su responsabilidad

estaba limitada a aquellos meses incluidos en la vigencia de la póliza.

La Cooperativa solicitó que se dictara sentencia sumaria a su favor arguyendo que cuando la Sra. García advino incapaz, la póliza estaba vigente, consecuentemente COSVI era responsable por la cantidad adeudada por los esposos Oquendo-García hasta el máximo de sesenta meses, según lo estipulado en el contrato de seguro, y el matrimonio era responsable por la diferencia restante entre la cantidad adeudada y lo cubierto por el seguro. El matrimonio se allanó en cuanto a la responsabilidad de COSVI y se opuso en cuanto a su responsabilidad sobre las mensualidades restantes, no cubiertas por la póliza. Por su parte, COSVI se opuso y solicitó que se dictara sentencia sumaria a su favor reiterando los argumentos expuestos en su contestación.

El Tribunal de Primera Instancia dictó sentencia sumaria a favor de COSVI y de los esposos Oquendo-García desestimando las acciones en contra del matrimonio y en contra de COSVI. Oportunamente, la Cooperativa acudió ante el Tribunal de Circuito de Apelaciones quien confirmó la sentencia apelada haciendo la salvedad de que a su entender la desestimación decretada por el Tribunal de Primera Instancia se refería únicamente en cuanto a la responsabilidad de COSVI y no en cuanto a los esposos Oquendo-García. El tribunal intermedio concluyó que nada en el contrato suscrito entre la Cooperativa y COSVI disponía

para que la Cooperativa quedara liberada del pago de la prima mensual cuando el deudor del préstamo hipotecario adviniera incapaz, consecuentemente, una vez los pagos de la prima dejaron de emitirse, la cubierta expiró, por lo que la responsabilidad de COSVI se limitaba al tiempo de vigencia de la póliza. Consecuentemente, la Cooperativa venía obligada a continuar realizando los pagos de las primas. Una vez incumplida esta obligación, COSVI no tenía obligación de pagar beneficios de cubierta más allá del periodo durante el cual la misma estuvo vigente.

Inconformes con la determinación del Tribunal de Circuito de Apelaciones, la Cooperativa acudió ante nos aduciendo que el tribunal apelativo incidió, en primer lugar, al establecer como condición para el pago de beneficios de una póliza de incapacidad, que se continuara el pago de primas durante el periodo de incapacidad; exigir que se renovara la póliza como requisito para el pago de la reclamación cuando la misma surgió dentro de la vigencia de la póliza. Por último señaló que el tribunal erró al liberar completamente al matrimonio de la totalidad de la deuda al amparo de una póliza cuyo beneficio mayor es menor a la totalidad de lo debido.[4]

---

[4] En esencia eso fue lo resuelto por el Tribunal de Primera Instancia al ordenar la desestimación y sobreseimiento de la causa de acción tanto en contra de COSVI como en contra del matrimonio. Sin embargo, el Tribunal de Circuito de Apelaciones al confirmar la sentencia del Tribunal de Primera Instancia hizo la salvedad de que a su entender la desestimación decretada por el tribunal inferior y por éstos confirmada se refería únicamente a COSVI y no beneficiaba al matrimonio.

Luego de expedir el auto solicitado y examinar las comparecencias de las partes, resolvemos.

II

Un contrato de seguro es un contrato mediante el cual una persona se obliga a indemnizar a otra o a proveerle un beneficio específico o determinable al producirse un suceso incierto, previsto en el mismo. 26 L.P.R.A. sec. 102. Es un mecanismo para enfrentar la carga financiera que podría causar la ocurrencia de un evento en específico.

Los aseguradores, mediante este contrato, asumen la carga económica de los riesgos transferidos a cambio de una prima. El contrato de seguros, es pues, un contrato voluntario mediante el cual, a cambio de una prima, el asegurador asume unos riesgos. La asunción de riesgos es, por lo tanto, uno de los elementos principales de este contrato. En resumen, en el contrato de seguros se transfiere el riesgo a la aseguradora a cambio de una prima y surge una obligación por parte de ésta de responder por los daños económicos que sufra el asegurado en caso de ocurrir el evento específico. Aseg. Lloyd's London et al. v. Cía. Des. Comercial, 126 D.P.R. 251, 266-267 (1990).

Existen distintas clases de contratos de seguros. Entre éstos se encuentran los contratos de seguro de crédito que protegen contra pérdidas o daños resultantes por la falta de pago al asegurado por deudores de éste. 26 L.P.R.A. sec. 408(9); 11 Couch on Insurance, 3rd Ed., Westgroup, sec. 167:32, (1997). En caso de que ocurra,

durante la vigencia de la póliza, el suceso por el cual la aseguradora se comprometió a responder continuando con los pagos de un crédito asegurado, ésta es responsable de dichos pagos por el tiempo al que se haya obligado según los términos del contrato.

Por su parte, los seguros de crédito por incapacidad son aquellos que aseguran el crédito en la eventualidad de que el deudor asegurado advenga incapaz de forma tal que esté impedido de trabajar y, por lo tanto, se afecte su viabilidad de pago. En este caso, la aseguradora es responsable de pagar al acreedor de una deuda específica las mensualidades debidas por el deudor según los términos de la deuda, por el tiempo y hasta el monto que la aseguradora se haya comprometido a pagar según los términos de la propia póliza. Su propósito es proteger los intereses del acreedor en caso de que el deudor sufra de una incapacidad y, de esta forma, mitigar las dificultades que pueda el deudor sufrir a causa de esta incapacidad. In re Motto, 263 B.R. 187 (2001).

La vigencia de una póliza de seguro es el tiempo durante el cual una aseguradora se compromete a responder en caso de que suceda un hecho en específico. Las pólizas de seguro están en vigor por el término pactado en el contrato, excepto que el asegurador podrá cancelarlas previamente por falta de pago o incumplimiento de algunas de las condiciones pactadas. La importancia del término de vigencia de la póliza estriba en que para que el asegurador

responda por los daños del asegurado, el evento específico, o riesgo asumido por el asegurador, tiene que ocurrir durante la vigencia del contrato. Cruz Rolando, Derecho de Seguros, Ed. Luiggi Abraham, Publicaciones JTS, San Juan, 1999, pág. 149.

La cancelación de un contrato de seguros termina los derechos y obligaciones de las partes a partir del momento de su efectividad. Una vez cancelada la póliza, el asegurado no es responsable del pago de primas posteriores a la cancelación y la aseguradora queda libre de toda responsabilidad por hechos que surjan después de ser efectiva la cancelación. *Énfasis suplido*. 2 Couch on Insurance, *supra,* secs. 30:22-30:24. Casanova v. P.R. American Insurance Co., 106 D.P.R. 689, 695 (1978). Es decir, que para que la aseguradora responda en virtud del contrato de seguros por el riesgo asumido, el evento específico cubierto por la póliza, tiene que surgir durante la vigencia de la misma, por lo tanto, previo a su cancelación.

Por otro lado, una compañía aseguradora no puede evadir la responsabilidad a la que se obligó en el contrato de seguro alegando la cancelación de la póliza, si el hecho para el cual se comprometió a responder ocurrió antes de la cancelación de la misma. 2 Couch on Insurance, *supra,* sec. 30:24. Los efectos de la cancelación, en cuanto a la liberación de responsabilidad por parte de la aseguradora, son prospectivos.

Al momento de interpretar las cláusulas de un contrato de seguro debemos recordar que los contratos de seguros, al igual que todos los contratos, constituyen ley entre las partes siempre y cuando cumplan con los requisitos de todos los contratos. A saber, que los mismos tengan objeto, consentimiento y causa, y no sean contrarios a la ley y al orden público. Quiñones López v. Manzano Posas, 141 D.P.R. 139, 154 (1996); Autoridad de Acueductos y Alcantarillados v. Librotex Inc., 141 D.P.R. 375, 380 (1996); Torres v. E.L.A., 130 D.P.R. 640, 651 (1992).

Además, los contratos de seguros, por mandato legislativo, se interpretarán integralmente a base del conjunto total de sus términos y condiciones según sean expresados en la póliza. 26 L.P.R.A. sec. 1125. Es decir que al interpretarse la póliza, ésta debe hacerse conforme al propósito de la misma, o sea, el ofrecer protección al asegurado. Por esto, no se favorecerán interpretaciones sutiles que le permitan a la aseguradora evadir su responsabilidad. Consecuentemente, la labor de los tribunales consiste en buscar el sentido y significado que le daría una persona de normal inteligencia, que fuese a comprar la póliza, a las cláusulas en ésta contenidas. Domínguez Vargas v. Great American Life, res. el 12 de julio de 2002, 2002 T.S.P.R. 104; Quiñones López v. Manzano Posas, supra, pág. 155. PFZ Props Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994).

Por último, los contratos de seguros son considerados contratos de adhesión. Por ser un contrato de adhesión, cuando los mismos contienen una cláusula confusa, la misma se interpretará liberalmente a favor del asegurado. Quiñones López v. Manzano Posas, *supra*, pág 155. Claro que cuando los términos y condiciones son claros, específicos y libres de ambigüedades, los mismos son obligatorios entre las partes. Quiñones López v. Manzano Posas, *supra*, pág 155; García Curbelo v. A.F.F., 127 D.P.R. 747 (1991). Por esta razón, el que sean considerados contratos de adhesión no tiene el efecto de obligar a que se interpreten sus cláusulas a favor del asegurado cuando sus términos son claros. Torres v. E.L.A., *supra*, pág 652.

A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.

III

Los seguros por incapacidad son diseñados para proveer protección de la pérdida de ingresos causada por una lesión o enfermedad que afecte la capacidad para trabajar del asegurado. 10 Couch on Insurance, *supra*, sec. 146:2. Como mencionáramos anteriormente, en el caso de los seguros de crédito por incapacidad, la aseguradora asume un riesgo, a cambio de la prima pactada, mediante el cual de advenir incapaz el deudor, surge la obligación de ésta, de ofrecer los beneficios a los cuales se comprometió, para con el tenedor de la misma.

En el caso de autos, COSVI expidió una póliza grupal de Seguro Colectivo de Incapacidad Total a favor de la Cooperativa. A través de la misma, y a cambio de una prima, COSVI asumió la obligación de responderle a la Cooperativa por las mensualidades de los distintos deudores asegurados en caso de que alguno de éstos adviniera incapaz limitándose su habilidad, para trabajar, generar ingresos y, por lo tanto, cumplir con los pagos mensuales debidos a la Cooperativa. Por medio de este contrato, COSVI se obligó a responder por la incapacidad sobrevenida de los deudores asegurados por la póliza. El surgimiento de esta incapacidad, es el suceso incierto o el evento específico, y el riesgo asumido por la aseguradora, que marca el inicio de su responsabilidad para con el tenedor de la póliza, en este caso, la Cooperativa.

Entre los deudores asegurados por la póliza grupal se encontraba la Sra. García quien estuvo cubierta por la póliza hasta el mes de septiembre de 1997. La Sra. García advino incapaz en el mes de enero de ese mismo año, fecha en que todavía estaba vigente la póliza de seguro. Además, la Sra. García hizo una reclamación directamente en contra de la aseguradora en el mes de febrero, reclamación que, de primera intención, fue denegada por la aseguradora por entender que había inexistencia de la incapacidad. Sin embargo, al verse demandados deciden aceptar responsabilidad pero sólo hasta el mes de septiembre, fecha en que la póliza no fue renovada. COSVI argumentó que su

responsabilidad se extendía por el periodo transcurrido entre la fecha en que la Sra. García advino incapaz y la fecha en que el seguro cesó su cubierta. A su entender, la persona asegurada una vez sufra la incapacidad sólo tiene derecho a los beneficios mientras siga pagando las primas. Es decir, que una vez el asegurado sufra la incapacidad para la cual se aseguró y la cual lo hace acreedor de los beneficios pactados, tiene que seguir pagando primas para poder recibir los beneficios. Dicho argumento persuadió al Tribunal de Circuito de Apelaciones quien desestimó la demanda en contra de COSVI.

Por su parte, la Cooperativa sostiene que el Tribunal de Circuito de Apelaciones erró al establecer como condición para el pago de los beneficios de la póliza de incapacidad el que se continuara el pago de primas durante el periodo de incapacidad y, al exigir que se renovara la póliza como requisito para el pago de la reclamación cuando dicha reclamación surgió dentro de la vigencia de la póliza. Le asiste razón. Veamos.

COSVI se comprometió a pagar las mensualidades a las que el asegurado estuviese obligado para con la Cooperativa, en caso de que un deudor asegurado se incapacitara de forma tal que le impidiera realizar todos los deberes normales de su ocupación regular durante los primeros veinticuatro meses subsiguientes a su incapacidad. Además, estaba obligado más allá de este término, si la lesión le impidiera desempeñar los deberes para cualquier

ocupación para la cual estuviese capacitado, siempre que dicha incapacidad adviniese antes de los sesenta años y durante el periodo de vigencia de la cubierta individual del asegurado.[5] Estas mensualidades serían pagadas a partir del transcurso de treinta días de advenida la incapacidad, mientras subsistiere la misma hasta un máximo de sesenta meses, si la incapacidad surgiere antes de los cincuenta y cinco años, treinta meses si la incapacidad surgiere en o después de esta edad.[6]

La Sra. García advino incapaz en enero de 1997 cuando la póliza aún estaba vigente por lo que el tenedor de la póliza, en este caso la Cooperativa, tiene derecho a los beneficios pactados en la misma. Esto significa que la Cooperativa tenía derecho a recibir de la aseguradora el pago de las mensualidades debidas por la Sra. García hasta un máximo de sesenta meses a partir de treinta días del surgimiento de la incapacidad. Por lo tanto, COSVI tenía que comenzar a pagar las mensualidades desde el mes de marzo de 1997 y tiene que continuar pagando las mismas hasta un máximo de sesenta meses, mientras no sucedan una de las siete causales para su terminación. Según se desprende de la póliza:

> "Los pagos por incapacidad terminarán al ocurrir cualesquiera de los siguientes eventos:
> 1. Al concluir el periodo de pago de préstamo.
> 2. Al terminar la incapacidad.

---

[5] Póliza, *supra*, pág 2.
[6] Id. Pág. 5.

3. Cuando el préstamo es pagado por concepto de un beneficio de incapacidad en una Póliza de Vida de Crédito.

4. Cuando el préstamo es pagado, refinanciado o termina de alguna otra forma.

5. Al morir el deudor asegurado.

6. Cuando el deudor deje de estar bajo el cuidado profesional y atención regular de un médico, según definido.

7. Cuando el deudor preste servicios con remuneración o sin ella."[7]

En ningún momento, la póliza indica que los beneficios de incapacidad cesarán por la falta de pago de primas. Además, las primas son la contraprestación ofrecida por el deudor asegurado a cambio de que sea la aseguradora la que asuma el riesgo en caso de ocurrir un hecho específico. En el caso de autos, el hecho específico para el cual la Sra. García se quiso proteger fue, precisamente, la eventualidad de que le adviniera una incapacidad que le impidiera continuar efectuando los pagos mensuales de su préstamo con la Cooperativa. A cambio de las primas pagadas por ésta, la aseguradora asumió ese riesgo. Es decir, fue a cambio de las primas que la aseguradora asumió el riesgo haciéndose responsable de los pagos mensuales del préstamo indicado en el caso de surgir una incapacidad en el deudor asegurado. Es a cambio de la asunción del riesgo que la aseguradora recibe las primas. Una vez acontece el evento específico por el cual la aseguradora asumió el riesgo, tiene que responder con los beneficios pactados y el pago de primas debe quedar suspendido debido a que la causa de estas

---

[7] Póliza, *supra*, pág 6.

primas, la asunción de riesgos por incapacidad sobrevenida, es inexistente.

Como hemos mencionado, COSVI alega que según el contrato de seguro del caso de autos, el asegurado tiene que seguir pagando las primas durante el término en que sufra la incapacidad para ser acreedor de los beneficios.[8] Debido a que las primas fueron pagadas hasta el mes de septiembre, ésta alega que ella sólo es responsable por las mensualidades debidas hasta ese mes. Apoya su contención en la siguiente cláusula:

> "La cantidad de beneficio mensual con respecto a cualquier deudor hipotecario será igual a la mensualidad que se obliga a pagar el tenedor de la póliza por concepto de: principal, intereses y otros depósitos en plica ("escrow items") según se evidencia del pagaré, excluyendo la prima de este seguro"[9]

Aduce que debido a que específicamente se excluye el pago de la prima de los beneficios a pagar por COSVI en caso de incapacidad, se debe entender que mientras dure la incapacidad se tiene que continuar con el pago de la prima.

En primer lugar, según la propia póliza, es el tenedor de la misma, en este caso la Cooperativa, y no el asegurado el responsable de pagar las primas. Las cláusulas que hablan sobre el comienzo de la cubierta de la mencionada póliza, señalan que la misma comienza una vez el deudor que solicite la cubierta lo haga en el formulario provisto por COSVI, "y que acepte pagar los cargos a ser cobrados por el

---

[8] Alegato Cooperativa de Seguros de Vida, pág 5.
[9] Póliza, *supra*, pág 3.

tenedor de la póliza por éste seguro..."[10] Esto nos indica que aunque la Cooperativa es la responsable de pagar las primas ante COSVI, ésta a su vez se las cobra al asegurado para con esos fondos pagar las mismas. Esta porción del pago se le incluye al deudor asegurado para entonces la Cooperativa pagarle a COSVI. Es natural y lógico que COSVI no incluya entre los beneficios a pagar, aquella cantidad que es cobrada para pagar sus propias primas. Ello debido a que se estaría pagando a sí misma. Esa es la interpretación adecuada de la cláusula que estipula los beneficios a pagar por COSVI en el caso de que surgiera la incapacidad. Entre los beneficios se excluye el pago de primas pues debido a que el acontecimiento para el cual se aseguró el deudor ocurrió, éste es acreedor de los beneficios pactados y la aseguradora no está asumiendo ningún otro riesgo que justifique el cobro de primas.

No podemos coincidir con la interpretación que hace COSVI de esta cláusula, su lenguaje no lo justifica. Es nuestra labor buscar el sentido que le daría una persona de normal inteligencia que fuese a comprar la póliza. Además, al interpretar las cláusulas de un contrato de seguro, por éstos ser contratos de adhesión, en el caso de que exista alguna cláusula oscura se debe interpretar a favor del asegurado. De todas formas, entendemos que la cláusula claramente estipula el monto del beneficio a pagar a la que la aseguradora se obliga en caso del surgimiento de una

---

[10] Id. pág 5.

incapacidad del deudor asegurado y nada dice sobre la necesidad del pago de primas posteriores para obtener los beneficios a los que se tiene derecho en virtud del contrato de seguro.

El argumento central de COSVI, como hemos mencionado, es que debido a que las primas se dejaron de pagar, la cubierta perdió su vigencia por lo que ellos sólo son responsables de pagar los beneficios a los que se comprometieron en la póliza por los meses en que aún estuvo vigente la misma. Para sostener su posición utilizan también otra de las cláusulas de la póliza la cuál establece que el seguro terminará entre otras cosas, "al expirar el mes póliza siguiente al último mes póliza para el cual el asegurado pagó la prima".[11]

Aunque la redacción de esta cláusula es confusa el significado de la misma es incuestionable. A nuestro entender, la misma estipula que la póliza cesará su vigencia al momento de que se deje de pagar las primas. Es decir que una vez se deje de pagar la póliza, la misma expirará y el asegurado no estará cubierto en caso de advenir incapaz por lo que no será acreedor de los beneficios. No hay controversia en cuanto a que la póliza expiró en septiembre del 1997, sin embargo, eso sólo sería relevante si la incapacidad de la Sra. García hubiese sido advenida en una fecha posterior a la expiración de la vigencia de la póliza.

---

[11] Póliza, *supra*, pág. 7.

En el caso de autos, la Sra. García advino incapaz en enero de 1997 cuando la póliza estaba vigente. Se les solicitó a COSVI los beneficios a los que se obligaron a cambio de la cubierta en febrero de 1997 cuando todavía estaba vigente. Es forzoso concluir que COSVI tiene la obligación de responder por lo pactado, a saber, el pago de las mensualidades del préstamo debidas a la Cooperativa por el tiempo que dure la incapacidad o si es total, como en este caso, hasta un máximo de sesenta meses. Sabido es que la cancelación de la póliza no afectará reclamación alguna que se haya originado con anterioridad a la fecha de la misma. Así lo reconoce la propia póliza.[12] Si bien la aseguradora no responde por hechos que surjan luego de la cancelación de la cubierta, sigue respondiendo por aquellos surgidos cuando la misma aún estaba vigente. Los efectos de la cancelación de la póliza son prospectivos por lo que no pueden afectar los derechos adquiridos durante la vigencia de la misma.

El propósito del contrato de seguros, en este caso, es el mitigar los daños que podría ocasionar el advenimiento de una incapacidad que impida al deudor generar ingresos y, consecuentemente, pagar sus deudas. Es con este propósito en mente que debemos interpretar las cláusulas de este contrato. Está fuera de toda lógica el entender que aquél que no tiene para pagar los pagos mensuales debido a su incapacidad sí tenga que seguir pagando la prima para

---

[12] Póliza, *supra*, pág 10.

recibir los beneficios de los que ya es acreedor. La aseguradora asumió un riesgo a cambio de una prima. Ese riesgo es la causa que justifica el pago de la prima. Una vez ocurre el hecho específico por el cual se hizo el contrato la aseguradora tiene que responder. Una vez adviene incapaz el deudor no existe pues un riesgo que asegurar por lo que el pago de la prima no tiene causa que lo justifique. Una vez el deudor asegurado advino incapaz, o sea que sucedió el evento para el cuál la persona compró el seguro, le toca al seguro responder según lo pactado. Decir lo contrario sería equivalente a pretender que luego de la muerte de un asegurado por un seguro de vida, el beneficiario de la póliza o quizás el propio muerto tengan que continuar pagando las primas para que la aseguradora pague los beneficios.

Es menester recordar que el negocio de los seguros es uno de asunción de riesgos. El asegurador va a responder en la eventualidad de que surja el suceso incierto para el cual la persona se aseguró. Es un riesgo que asume el asegurador a cambio de una prima. Es un negocio en donde la ganancia no estriba en las primas cobradas a aquellos asegurados que luego solicitan los beneficios, sino que la misma estriba en las primas cobradas a aquellos asegurados que nunca llegan a ser acreedores de los beneficios. Interpretar el contrato de seguro de forma tal que se entienda que el asegurado, una vez es acreedor de los beneficios, para recibirlos tiene que seguir pagando una

prima, es ir en contra de la esencia de estos contratos. El riesgo futuro e incierto sobre el cual el asegurado se quiso proteger ocurrió, por lo que la aseguradora está obligada a responder con los beneficios según pactados. Es precisamente para esto que el asegurado estuvo pagando las primas.

En el caso de autos, la Sra. García estaba cubierta por la póliza expedida por COSVI en caso de que adviniera incapaz según lo define la propia póliza. La incapacidad de la Sra. García no está en controversia. En caso de advenir incapaz la deudora, en este caso la Sra. García, la aseguradora se comprometió a pagarle a la Cooperativa las mensualidades de la deuda de la asegurada incluyendo el "principal, intereses y otros depósitos en plica "escrow items" según se evidencian del pagaré." La incapacidad de la Sra. García surgió durante la vigencia de la póliza por lo que ésta tiene derecho a los beneficios pactados por la aseguradora, a saber, el pago de las mensualidades debidas a la Cooperativa durante la vigencia de la incapacidad o hasta un máximo de sesenta meses.

Por no estar en controversia que la incapacidad de la Sra. García es total, resolvemos que por la incapacidad ser sobrevenida durante la vigencia de la póliza de seguro, ésta es acreedora de los beneficios pactados en la misma, razón por la cual la aseguradora es responsable del pago de las mensualidades hasta un máximo de sesenta meses, según

sus propios términos, sin importar que posteriormente la póliza fuese cancelada.

Por otro lado, el pago que le corresponde a la aseguradora no dispone de la totalidad de la deuda. Los beneficios de la póliza cubrían hasta sesenta mensualidades. La Cooperativa, por tanto, tiene derecho a que su deudor, el matrimonio Oquendo-García, responda por el remanente de su deuda una vez acreditado el pago durante sesenta meses por parte de la aseguradora.

Por las razones expuestas anteriormente procede que revoquemos el dictamen del Tribunal de Circuito de Apelaciones y devolvemos el recurso al Tribunal de Primera Instancia para que resuelva conforme con lo aquí expuesto.

Se dictará Sentencia de conformidad.


                            Federico Hernández Denton
                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Ahorro y
Crédito Oriental
        Demandante-Peticionario

                    v.

David Oquendo Camacho y su
esposa Aida Iris García Ortiz
y la Sociedad de Bienes                CC-2001-179  Certiorari
Gananciales formada por ambos
        Demandados-Recurridos

                    v.

Cooperativa de Seguros de Vida
        Tercera Demandada-
        Recurrida


                    SENTENCIA

        San Juan, Puerto Rico, a 28 febrero de 2003.

        Por los fundamentos expuestos en la Opinión que
antecede, la cual se hace formar parte integral
del la presente, se revoca al Tribunal de
Circuito de Apelaciones y se devuelve el recurso
al Tribunal de Primera Instancia para que se
resuelva según lo aquí dispuesto.

        Así lo pronunció y manda el Tribunal y
certifica la Secretaria del Tribunal Supremo. El
Juez Asociado señor Rebollo López concurre sin
opinión escrita. El Juez Asociado señor Rivera
Pérez emitió Opinión Disidente.


                    Patricia Otón Olivieri
                Secretaria del Tribunal Suprem

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Ahorro y
Crédito Oriental

      Peticionaria

           v.

David Oquendo Camacho y su
esposa Aida Iris García
Ortiz, et al

      Recurridos

                               CC-2001-179     Certiorari

Cooperativa de Seguros de
Vida

      Terceros Demandados

**Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez.**

San Juan, Puerto Rico, a 28 de febrero de 2003.

**En el presente caso la parte peticionaria no incluyó en el apéndice del recurso de _Certiorari_ ante nos los anejos incluidos en el apéndice del recurso de apelación presentado ante el Tribunal de Circuito de Apelaciones, ni los alegatos de las partes apeladas ante ese foro intermedio apelativo. El recurso ante nos no se perfeccionó, a tenor con lo dispuesto en la Regla**

20 (k) (1) de nuestro Reglamento. Concluimos que este Tribunal carece de jurisdicción para atender y resolver el asunto traído ante nuestra consideración. La Mayoría asume jurisdicción sobre el presente asunto y resuelve la controversia ante nos en los méritos. Respetuosamente, DISIENTO.

El Artículo 3.002, inciso (d) (1), de la Ley de la Judicatura de Puerto Rico de 1994[13] dispone lo siguiente:

> **(d) Mediante auto de *certiorari*, a ser expedido discrecionalmente, revisará las demás sentencias o resoluciones del Tribunal de Circuito de Apelaciones.**

> (1) El recurso de *certiorari* ante el Tribunal Supremo para revisar las sentencias en recursos de apelación emitidas por el Tribunal de Circuito de Apelaciones deberá ser presentado en la Secretaría del Tribunal Supremo dentro del término jurisdiccional de treinta (30) días contados desde la fecha del archivo en autos de copia de la notificación de la sentencia recurrida. **(Énfasis nuestro.)**

> **En aquellos casos civiles en que el Estado Libre Asociado de Puerto Rico, sus funcionarios, alguna de sus instrumentalidades que no fuere una corporación pública o los municipios de Puerto Rico sean parte, la solicitud de *certiorari* para revisar las sentencias en recursos de apelación emitidas por el Tribunal de Circuito de Apelaciones deberá ser presentada en la secretaría del Tribunal Supremo, por cualquier parte en el pleito perjudicada por la sentencia, dentro del término jurisdiccional de sesenta (60) días contados desde la fecha del archivo en autos de copia de la notificación de la sentencia recurrida.**

La Regla 53.1 (d) (1) de Procedimiento Civil de Puerto Rico[14] dispone lo siguiente:

> **(d) *Recurso de certiorari al Tribunal Supremo.*-**

> (1) El recurso de *certiorari* ante el Tribunal Supremo para revisar las sentencias emitidas por el Tribunal de Circuito de Apelaciones en recursos de apelación deberá ser presentado en la secretaría del Tribunal Supremo dentro del término jurisdiccional de treinta (30)

---

[13] 4 L.P.R.A. sec. 22i (d) (1).

[14] 32 L.P.R.A. Ap. III, R. 53.1 (d) (1).

días contados desde la fecha del archivo en autos de copia de la notificación de la sentencia recurrida. **(Énfasis nuestro.)**

**En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios, alguna de sus instrumentalidades que no fuere una corporación pública o los municipios de Puerto Rico sean parte, la solicitud de** *certiorari* **para revisar las sentencias en recursos de apelación emitidas por el Tribunal de Circuito de Apelaciones deberá ser presentada en la secretaría del Tribunal Supremo, por cualquier parte en el pleito perjudicada por la sentencia, dentro del término jurisdiccional de sesenta (60) días contados desde la fecha del archivo en autos de copia de la notificación de la sentencia recurrida.**

**La Regla 20 (k) del Reglamento de este Tribunal[15] dispone lo siguiente:**

(k) Se hará formar parte de la petición un apéndice que contendrá una copia de:

(1) El recurso presentado ante el Tribunal de Circuito de Apelaciones, la oposición de la otra parte y sus respectivos apéndices;

(2) los alegatos presentados por las partes ante el Tribunal de Circuito de Apelaciones, si los hubiere; **(Énfasis nuestro.)**

**(3) la sentencia, resolución, decisión, orden o providencia interlocutoria del Tribunal de Circuito de Apelaciones, cuya revisión se solicita;**

**(4) la sentencia, resolución, decisión, orden o providencia interlocutoria del Tribunal de Primera Instancia o la decisión de la agencia administrativa que fue objeto de revisión por el Tribunal de Circuito de Apelaciones;**

**(5) cualquier otra resolución u orden, providencia interlocutoria o escrito de cualquiera de las partes, que forme parte del legajo en el Tribunal de Circuito de Apelaciones y en el cual se discuta expresamente cualquier asunto que se plantee en la petición de** *certiorari*;

---

[15] 4 L.P.R.A. Ap. XXI-A, R. 20 (k).

(6) copia de todos aquellos documentos necesarios para establecer de manera fehaciente la jurisdicción del Tribunal Supremo, y

(7) cualquier otro documento que forme parte del récord en el Tribunal de Circuito de Apelaciones, y que pueda ser útil a este tribunal al tomar su decisión sobre la expedición del auto.

Cuando se trata de revisar sentencias o resoluciones del Tribunal de Circuito de Apelaciones emitidas en casos previamente consolidados por el Tribunal de Circuito de Apelaciones se podrá autorizar la presentación de un apéndice conjunto que contendrá una copia de los documentos incluidos en las cláusulas anteriores. Esta excepción no releva de la presentación de nueve (9) copias según lo dispone la Regla 40 de este apéndice.

El recurso de <u>certiorari</u> al Tribunal Supremo, para revisar una sentencia del Tribunal de Circuito de Apelaciones en un recurso de apelación, no se perfecciona sin incluir el apéndice requerido por la Regla 20 (k) del Reglamento del Tribunal. Al expirar el término jurisdiccional para presentar tal recurso ante este Tribunal, éste debe haber cumplido con las disposiciones reglamentarias pertinentes, incluso lo relativo al apéndice. Dicho término es de treinta (30) días, a partir del archivo en autos de una copia de la referida sentencia recurrida, dictada por el Tribunal de Circuito de Apelaciones. El referido término para presentar el recurso de <u>certiorari</u> con su apéndice ante este Tribunal es improrrogable por ser precisamente de índole jurisdiccional.[16]

---

[16] <u>Mfrs. H. Leasing v. Carib. Tubular Corp.</u>, 115 D.P.R. 428 (1984).

En <u>Codesi, Inc. v. Mun. de Canóvanas</u>,[17] expresamos lo

siguiente:

> En su dimensión procesal, el principio rector de la igual protección de las leyes, nos obliga a usar dos (2) varas iguales para medir y adjudicar recursos ante el Tribunal de Circuito de Apelaciones y este foro, esto es interpretar y aplicar rectamente las mismas normas reglamentarias que requieren determinados documentos, imprescindibles en los Apéndices, demostrativos de la jurisdicción apelativa y los méritos del recurso. **(Énfasis nuestro.)**

> **Hasta el presente, consistentemente este Tribunal se ha negado a expedir recursos por deficiencias como las que contiene la apelación del Municipio, en recursos presentados ante nos (o ante el Tribunal de Circuito de Apelaciones). En esas circunstancias hemos fundamentado nuestra determinación en** "ausencia de jurisdicción" **(prematura, tardía e, incluso, no demostrada), o** "por incumplimiento craso con el Reglamento". *Arriaga Rivera v. Fondo del Seguro del Estado*, **res. en 18 de marzo de 1998,** 98 JTS 28. **(Énfasis en el original.)**

> **El siguiente análisis estadístico refleja este enfoque doctrinario.**

| Año Natural | No ha lugar por craso incumplimiento con el Reglamento | No ha lugar por falta de jurisdicción | Total |
|---|---|---|---|
| 1996 | 32 | 67 | 99 |
| 1997 | 43 | 63 | 106 |
| 1998 | 81 | 86 | 167 |
| 1999 | 105 | 95 | 200 |
| Total | 261 | 311 | 572 |

---

[17] Res. el 24 de marzo de 2000, 2000 TSPR 48, 150 D.P.R. ___ (2000), 2000 JTS 61.

Estas estadísticas y dictámenes revelan dramáticamente que subsiste entre algunos abogados un desconocimiento de las normas y reglas aplicables a los recursos apelativos ante el Tribunal de Circuito y este Tribunal. Ha transcurrido tiempo más que suficiente para la profesión legal haberse familiarizado con las reglas y normas pertinentes. No podemos pues, en aras de una ilusoria flexibilidad, erosionar sustancialmente esa doctrina apelativa. Máxime, que ello dejaría a la discreción de cada uno de los once (11) paneles del Tribunal de Circuito de Apelaciones determinar si se cumple o no con las normas mandatorias de su Reglamento. Aspiramos una práctica apelativa forense de excelencia, no pobre que socavaría la uniformidad deseada. (Énfasis en el original.)

Precisamente, según antes indicado, en este caso tres (3) de las cinco (5) deficiencias incurridas por el Municipio de Canóvanas en el Apéndice han sido siempre consideradas por este Tribunal (también por el Circuito de Apelaciones), como sustanciales y han conllevado desestimación por incumplimiento craso con el Reglamento: (i) omitir el formulario de la notificación del archivo en autos de la sentencia dictada por el foro de instancia; (ii) no incluir copias de las alegaciones de las partes, y (iii) no notificar a Codesi, Inc. copia completa de su escrito de apelación dentro del término jurisdiccional. No existen razones para variar este enfoque judicial. (Énfasis en el original.)

Concluimos que a este caso no se le ha aplicado la misma vara para medir y adjudicar, que por imperativo del principio constitucional de la igual protección de las leyes enfatizamos en Codesi, Inc. v. Mun. de Canóvanas, supra, era imprescindible. Este Tribunal ha denegado o desestimado múltiples recursos de certiorari, iguales o similares al presente, por no haber incluido el peticionario los mismos documentos que fueron omitidos en el apéndice del recurso ante nos.

La consistencia en nuestros pronunciamientos imparte una apariencia de justicia e imparcialidad a nuestras decisiones. Sobre el particular, en <u>In re Belk, Serapión</u>,[18] el Juez Asociado señor Rebollo López señaló en Opinión Concurrente lo siguiente:

> [A]un cuando es correcto que la consistencia en nuestras decisiones no es una garantía absoluta de la corrección de las mismas, no hay duda que la misma resulta ser de gran importancia. **En** primer **lugar, ser consistentes imprime estabilidad, confiabilidad y credibilidad a nuestro sistema de justicia. En** segundo **término, y desde el ámbito individual, la consistencia nos brinda tranquilidad de conciencia.** Por otro lado, **y desde un punto de vista institucional, la misma evita que el Tribunal emita decisiones injustas; ello así ya, que si juzgamos a todo el mundo en forma consistente, resulta casi imposible que caigamos en la injusticia.** (Énfasis en el original.)

## II

Por todo lo antes expuesto, disiento de la Opinión Mayoritaria. Denegaría la expedición del auto de <u>certiorari</u> solicitado, por falta de jurisdicción de este Tribunal para atenderlo y resolverlo.

Efraín E. Rivera Pérez
Juez Asociado

---

[18] Res. el 28 de junio de 1999, 99 TSPR 121, 148 D.P.R. ___ (1999), 99 J.T.S. 126.