ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CHERIF R. MEDAWAR, su esposa MARÍA TERESA GALAZ LOZANO, y la sociedad legal de bienes gananciales compuesta por ambos; ORIGINAL RESOURCES, INC.; UGF, LLC; MIGSIF3, LLC, <br><br> Apelante, <br><br> v. <br><br> MULTINATIONAL INSURANCE COMPANY, <br><br> Apelada. | KLAN202500104 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior San Juan. <br><br> Civil núm.: SJ2020CV00157. <br><br> Sobre: incumplimiento de contrato; mala fe; cumplimiento específico; violaciones al Código de Seguros de Puerto Rico; daños y perjuicios. (Huracán María). |
|---|---|---|

Panel integrado por su presidenta, la jueza Ortiz Flores, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 5 de mayo de 2025.

En esta ocasión, la parte apelante, Cherif R. Medawar, María Teresa Galaz Lozano y la sociedad de bienes gananciales compuesta por ambos, Original Resources, Inc.; UGF, LLC; y MIGSIF3 (Medawar), incoó el presente recurso de apelación el 10 de febrero de 2025. Mediante este, nos solicitó que revocáramos la *Sentencia Parcial* emitida el 23 de octubre de 2024, notificada al día siguiente por el Tribunal de Primera Instancia, Sala Superior de San Juan. En ella, el foro primario desestimó la reclamación instada por Medawar, pues concluyó que el apelante no tiene un interés asegurable sobre dos propiedades ubicadas en el Viejo San Juan.

La apelada, Multinational Insurance Company, presentó su alegato el 13 de marzo de 2025.

Evaluado el recurso instado y la oposición de la parte apelada, confirmamos la *Sentencia Parcial* apelada.

Número identificador

SEN2025_____

I

La controversia ante nuestra consideración surge de una estela de reclamaciones incoadas a raíz del paso del huracán María el 20 de septiembre de 2017.

En síntesis, el 10 de enero de 2020, Medawar, presentó una reclamación en contra de la aseguradora Multinational[1]. Medawar alegó ser el dueño de 21 propiedades aseguradas por la parte apelada. De estas, 19 propiedades son comerciales[2]. Reclamó incumplimiento de contrato, según unas causas de acción apoyadas en el Código Civil[3]; violación a las disposiciones del Código de Seguros de Puerto Rico; costas y honorarios de abogado; y una indemnización por concepto de los daños que atribuyó al paso del fenómeno atmosférico[4].

Luego de varias incidencias y determinaciones adicionales en torno al caso, el 5 de abril de 2024, Multinational presentó una *Solicitud de Sentencia Sumaria*[5]. Entre otras cosas, la parte apelada adujo que no respondía por aquellas propiedades cuyos nombres de sus dueños no correspondieran a las partes aseguradas y nombradas en la póliza al momento del paso del huracán María. También, cuestionó el monto del daño reclamado, y el valor real de los costos y estimados de las reparaciones que presentase la parte apelante. Multinational listó una serie

---

[1] Véase, *Sistema Unificado de Manejo y Administración de Casos* (SUMAC), entrada 1.

[2] Según reza la *Demanda*, el número de la póliza objeto de controversia es 88-CP-000307790-2. *Véase*, SUMAC, entrada 23, que constituye una copia certificada de la póliza. La vigencia de la póliza lee como sigue: (POLICY PERIOD: FROM 05/06/2017 TO 05/06/2018 AT 12:01AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE).

En el denominado "GENERAL LIABILITY- RENEWAL DECLARATION", tanto la propiedad 259 Fortaleza como la propiedad 250 Calle Tanca aparecen listadas. *Véase*, apéndice del recurso, a las págs. 1810-1813. En el campo ("INSURED"), aparece: "Cherif R. Medawar &/or Original Resources, Inc. DBA: &/or 204 San Justo, LLC". En el apartado de "DESCRIPTION OF BUSINESS", aparece seleccionado el encasillado que lee como sigue: "ORGANIZATION, INCLUDING A CORPORATION (BUT NOT INCLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY". En la sección "BUSINESS DESCRIPTION", aparece mecanografiado: "BUILDING OWNER".

[3] A pesar de que el Código Civil de Puerto Rico, Ed. 1930, fue derogado efectivo el 28 de noviembre de 2020, por el Código Civil de Puerto Rico de 2020, Ley Núm. 55 de 1 de junio de 2020, a la controversia de autos le aplica el derogado Código Civil, pues los hechos se suscitaron durante la vigencia de este.

[4] *Véase*, SUMAC, entrada 1.

[5] *Íd.*, entrada 201.

de propiedades e incluyó las disputadas en esta controversia; a decir, 259 Fortaleza y 250 Calle Tanca.

El 17 de mayo de 2024, Medawar presentó su oposición[6]. Sobre las propiedades 259 Fortaleza y 250 Tanca, la parte apelante insistió en ostentar un interés asegurable. Alegó que la parte apelada aseguró ambas propiedades bajo la "Póliza de Medawar", por lo que estaban cubiertas al momento del paso del huracán. Adicionalmente, indicó que había pagado las primas por esas dos propiedades y, por tanto, poseía un interés económico y de protección sobre sus propiedades y su negocio. También, señaló que Multinational había reconocido la cubierta sobre las propiedades al notificarle un ajuste de su reclamación por la cantidad de $609,388.21. A la luz de ello, suplicó se denegara la solicitud de sentencia sumaria de Multinational.

Luego de varios trámites procesales, el 23 de octubre de 2024, el Tribunal de Primera Instancia, emitió una *Sentencia Parcial*[7]. En ella, el foro primario determinó que Medawar no ostenta un interés asegurable sobre las dos propiedades en controversia, por lo que desestimó la causa de acción sobre indemnización reclamada por Medawar. A continuación, y por su pertinencia en el caso de autos, transcribimos las primeras 15 determinaciones de hechos incluidas en la decisión[8]:

1. Los asegurados y Multinational suscribieron un contrato de póliza de seguro, el cual estaba vigente para el 20 de septiembre de 2017 y conforme los términos de esta póliza, se aseguraban propiedades inmuebles de los asegurados aquí demandantes, localizados en el Viejo San Juan, San Juan Puerto Rico y dicho contrato de seguro, cubría daños en caso de que esa propiedad sufriera durante un azote de huracán como ocurrió en 2017.

2. El 20 de septiembre de 2017, todo Puerto Rico fue azotado por el huracán María.

---

[6] *Véase*, SUMAC, entrada 205.

[7] *Véase*, SUMAC, entrada 211.

[8] Esta *Sentencia Parcial* del 20 de octubre de 2025 recoge aspectos de otra *Sentencia Parcial* emitida el 30 de septiembre de 2020 (*véase*, SUMAC, entrada 45), la *Demanda* (SUMAC, entrada 1), y anejos incluidos en la *Solicitud de sentencia sumaria parcial* presentada por la parte apelada el 5 de abril de 2024 (SUMAC, entrada 201). Estos anejos también hacen referencia a la *Sentencia* en el caso civil núm. SJ201902719, cuyo alfanumérico correcto es SJ2019CV2719.

3. Las partes demandantes, conforme los daños causados a los edificios propiedad de estos por el azote del huracán María, presentaron una reclamación por su propiedad asegurada con la póliza suscrita por Multinational, pues consideran que la totalidad de estos debían estar cubiertos por dicha póliza vigente a la fecha del azote del Huracán María y que cubría por daños según alegados.

4. La póliza utiliza los formularios estandarizados de pólizas de seguros redactados por la Oficina de Servicios de Seguros. La obligación principal de Multinational bajo la póliza es indemnizar a los demandantes por daños a la propiedad resultando de una causa cubierta. La póliza cubre la propiedad asegurada por pérdidas producto del huracán María, incluyendo los daños causados a la propiedad por el viento y el agua asociados al huracán María.

5. La codemandada Original Resources, Inc. y/u otro asegurado ha pagado todas sus primas correspondientes a la póliza y notificaron a Multinational de los daños causados por el huracán María a la propiedad asegurada, se puso la propiedad a la disposición de Multnational para inspección y proporcionaron a Multinational información relevante bajo su poder.

6. El codemandante UGF no es una entidad asegurada ni cubierta bajo la póliza que emitió Multinational.

7. La propiedad localizada en 259 Calle Fortaleza fue incluida en la reclamación.

8. UGF, LLC adquirió la propiedad localizada en 259 calle Fortaleza el 15 de julio de 2016.

9. Al momento del paso del huracán María, UGH[F], LLC era el dueño de la propiedad localizada en el número 259 calle Fortaleza.

10. La propiedad localizada en el número 250 calle la Tanca fue incluida en la reclamación.

11. La titularidad de la propiedad localizada en el número 250 calle la Tanca fue transferida por Cherif R. Medawar y su esposa María Teresa Galaz Lozano mediante negocio jurídico a una corporación de nombre 250 Tanca LLC, el 25 de junio de 2012.

12. La titularidad de la propiedad localizada en el número 250 calle la Tanca fue revertida al Sr. Cherif Medawar y la Sra. María Teresa Galaz Lozano el 7 de febrero de 2020.

13. Cherif Medawar y María Teresa Galaz Lozano son los titulares de la propiedad localizada en el número 250 calle la Tanca desde el 7 de febrero de 2020.

14. Al momento del paso del huracán María, 250 Tanca, LLC era el dueño de la propiedad ubicada en el número 250 calle la Tanca.

15. La corporación 250 Tanca, LLC no es una entidad asegurada ni cubierta bajo la póliza.

El 8 de noviembre de 2024, la parte apelante solicitó la reconsideración de la determinación parcial[9]. Indicó que, conforme al Código de Seguros de Puerto Rico, la doctrina de interés asegurable no exige titularidad, posesión o gravamen sobre una propiedad, **"sino que basta con que el asegurado pueda sufrir una pérdida económica si el bien es afectado."** [Negrillas en el original][10].

Ese mismo día, la parte apelada presentó una moción de reconsideración[11]. En resumen, disputó la valoración de daños presentada por la parte apelante.

El 2 de diciembre de 2024, ambas partes presentaron sendas mociones en oposición[12]. Por un lado, Medawar impugnó el razonamiento de Multinational sobre la fuente de análisis para determinar la suma que entiende está obligada en virtud del contrato de seguro. Por otro lado, Multinational apoyó su escrito en una determinación previa de este Tribunal de Apelaciones[13] para puntualizar que lo dictado en la *Sentencia* del tribunal apelativo intermedio indica que las corporaciones UGF, LLC y Tanca, LLC son quienes ostentan un interés asegurable, pero no figuran como aseguradas en la póliza. Por lo tanto, Medawar no ostentaba interés asegurable, ni al momento de la emisión de la póliza de seguro, ni a la fecha del siniestro.

El 9 de enero de 2025, el foro primario notificó su resolución[14], en la que declaró sin lugar la moción de reconsideración parcial presentada por el apelante. Resolvió que las pérdidas económicas reclamadas fueron sufridas por UGF, LLC, y 250 Tanca, LLC, entidades corporativas dueñas

---

[9] *Véase*, SUMAC, entrada 214.

[10] *Véase*, apéndice del recurso, a la pág. 6.

[11] *Véase*, SUMAC, entrada 216.

[12] *Íd.*, entradas 218 y 219.

[13] *Véase*, apéndice de la oposición, a las págs. 15-35, que constituye copia de la *Sentencia* de este Tribunal de Apelaciones del 7 de mayo de 2021, cuyo alfanumérico es el KLAN202000931. *Véase*, también, SUMAC, entrada 92.

[14] Cabe destacar que el foro primario emitió dos resoluciones interlocutorias ese día (*Véase*, SUMAC, entradas 223 y 224). En lo pertinente a la controversia de autos, sobre la doctrina de interés asegurable, y las propiedades 259 Calle Fortaleza y 250 Calle Tanca, nos referiremos a la entrada 224.

de las propiedades ubicadas en 259 Calle Fortaleza y 250 Calle Tanca, respectivamente. Adicionalmente, el tribunal decretó que Medawar no era el titular de las propiedades aseguradas, según previamente expuesto en las determinaciones de hechos de la decisión apelada.

Inconforme aún, el 10 de febrero de 2025, Medawar presentó este recurso y le imputó al foro apelado el siguiente y único error:

> ÚNICO SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL CONCLUIR QUE MEDAWAR NO OSTENTA UN INTERÉS ASEGURABLE SOBRE LAS PROPIEDADES UBICADAS EN LA CALLE 259 FORTALEZA Y 250 TANCA.

(Énfasis omitido; mayúsculas en el original).

El 12 de marzo de 2025, Multinational presentó su oposición al recurso.

Evaluados los argumentos de las partes litigantes, confirmamos la determinación apelada.

II

A

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. En su consecuencia, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Ramos Pérez v. Univisión*, 178 DPR, a las págs. 213-214.

Así, el Tribunal Supremo ha señalado que, "la parte que solicita la sentencia sumaria en un pleito está en la obligación de demostrar, fuera de

toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley". *Rivera, et al. v. Superior Pkg., Inc., et al.*, 132 DPR 115, 133 (1992). A su vez, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente." *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

Por último, no procede resolver un caso por la vía sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones alternativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (4) como cuestión de derecho no procede. *Echandi v. Stewart Title Guaranty Co.*, 174 DPR 355, 368 (2008). Además, un tribunal no deberá dictar sentencia sumaria cuando existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de credibilidad es esencial. *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009).

B

En nuestro ordenamiento jurídico, la industria de seguros está revestida de un gran interés público debido a su importancia, complejidad y efecto en la economía y la sociedad. *Jiménez López et al. v. SIMED*, 180 DPR 1, 8 (2010); *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 384 (2009). Como resultado de ello, el negocio de seguros ha sido regulado ampliamente por el Estado, principalmente mediante el *Código de Seguros de Puerto Rico*, Ley Núm. 77 del 19 de junio de 1957, según enmendada, 26 LPRA sec. 101, *et seq.* (Código de Seguros).

El Código define el contrato de seguro como aquel "contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". Art. 1.020 del Código de Seguros, 26 LPRA

sec. 102. Sobre el contrato de seguro, el Tribunal Supremo ha expresado que:

> […] Es un mecanismo para enfrentar la carga financiera que podría causar la ocurrencia de un evento en específico.
>
> Los aseguradores, mediante este contrato, asumen la carga económica de los riesgos transferidos a cambio de una prima. El contrato de seguros es, pues, un contrato voluntario mediante el cual, a cambio de una prima, el asegurador asume unos riesgos. La asunción de riesgos es, por lo tanto, uno de los elementos principales de este contrato. En resumen, en el contrato de seguros se transfiere el riesgo a la aseguradora a cambio de una prima y surge una obligación por parte de ésta de responder por los daños económicos que sufra el asegurado en caso de ocurrir el evento específico.

*Coop. Ahorro y Créd. Oriental v. S.L.G.*, 158 DPR 714, 721 (2003). (Cita omitida).

Existen distintos tipos de contratos de seguro. Entre estos, se encuentra el contrato de seguro de propiedad. El Art. 4.040 del Código de Seguros, 26 LPRA sec. 404, define el contrato de seguro de propiedad como "el seguro de toda clase de bienes raíces o muebles, e interés sobre los mismos, contra pérdida o daños por cualquier riesgo o causa, y contra pérdida como consecuencia de tales pérdidas o daños, que no sea una responsabilidad legal no contractual por tales pérdidas o daños".

C

La figura del interés asegurable tiene dos acepciones: la primera se refiere al requerimiento para la validez de una póliza de seguro[15]; y la segunda se refiere a la defensa que se puede plantear en un juicio para cuestionar la validez de una póliza de seguro[16]. El propósito de que se requiera un interés asegurable como condición previa para impugnar la validez de una póliza de seguro es "desalentar los usos ilícitos de los seguros, como las apuestas, y la destrucción de los bienes asegurados".

---

[15] S. Plitt, D. Maldonado, J.D. Rogers & J.R. Plitt definen **interés asegurable** como "cualquier interés económico legal y sustancial en la seguridad o preservación del objeto o sujeto del seguro libre de pérdidas, destrucción o daños pecuniarios". S. Plitt, D. Maldonado, J.D. Rogers & J.R. Plitt, *Couch on Insurance*, 3ra ed., Ed. Thomson-West, 2020, Vol. 16, Secs. 41:1, disponible en Westlaw. Históricamente no se requería un interés asegurable para poder llevar a cabo un contrato de seguro, aun cuando la ausencia de un interés asegurable le diera a la transacción un carácter de apuesta. *Íd.* Hoy en día, es ampliamente reconocido en los Estados Unidos que un interés asegurable es necesario para la validez de una póliza, sin importar el objeto de esta. *Íd.*

[16] S. Plitt, D. Maldonado, J.D. Rogers & J.R. Plitt, *Couch on Insurance*, 3ra ed., Ed. Thomson-West, 2020, Vol. 16, Secs. 41:5-41:6, disponible en Westlaw.

*Arthur Andersen LLP v. Federal Ins. Co.*, 416 N.J. Super. 344, 349-350 (2014). Por lo tanto, no cabe hablar de controversias con relación a la existencia de un interés asegurable si no existe una póliza de seguro de por medio.

De lo anterior surge que la falta de un interés asegurable puede privar a una persona de recobrar los beneficios de una póliza en la que aparece como asegurado. En sentido contrario, el interés asegurable no le concede a una persona un derecho a recobrar bajo una póliza de seguro, **en la que no aparece como asegurado**.

El Art. 11.050 del Código de Seguros, 26 LPRA sec.1105, particulariza la figura del interés asegurable como sigue:

1) Ningún contrato de aseguro sobre propiedad o interés en el mismo o que surja del mismo será exigible legalmente en cuanto al seguro, excepto para beneficio de personas que tuvieren interés asegurable en la cosa asegurada.

2) Interés asegurable. – Según se usa en este Artículo, significa cualquier interés económico real, legítimo y sustancial en la seguridad o conservación del objeto del seguro libre de pérdida, destrucción, deterioro o perjuicio pecuniario.

3) La medida de un interés asegurable en propiedad es el grado en que el asegurado pueda resultar damnificado por pérdidas, destrucción o deterioro de la misma.

D

Uno de los aspectos característicos de las corporaciones es que poseen su propia personalidad jurídica y su propio patrimonio, distinto a la personalidad y patrimonio de sus accionistas, sean estos últimos personas naturales o jurídicas. *D.A.Co. v. Alturas Fl. Dev. Corp. y Otro*, 132 DPR 905, 924 (1993).

La Ley Núm. 164-2009, conocida como *Ley General de Corporaciones de 2009*, 14 LPRA sec. 3501, *et seq.*, regula todo lo concerniente a las facultades y límites de la personalidad jurídica de las corporaciones. Por otro lado, el Art. 30 del Código Civil de Puerto Rico, Ed. 1930, 31 LPRA sec. 104, establece que las personas jurídicas pueden adquirir y poseer bienes de todas clases, así como contraer obligaciones y ejercitar acciones civiles o criminales, conforme a las leyes y reglas de su

constitución.[17] Estas facultades entran en vigor una vez el Departamento de Estado otorga el correspondiente certificado de incorporación.

### III

En esta ocasión, nos corresponde determinar si el foro primario erró al dictar sentencia sumaria parcial a favor de Multinational y en contra de Medawar. En síntesis, la parte apelante planteó que ostenta un interés asegurable sobre las propiedades 259 Fortaleza y 250 Tanca, por lo que exigió a la parte apelada la indemnización por daños con cargo a la póliza 88-CP-000307790-2, que incluía dichas propiedades. Por otro lado, la parte apelada se opuso a extender el pago solicitado para esas propiedades pues quien figura como la persona asegurada en la póliza ("insured") es una distinta a los dueños de las propiedades cuando sobrevino el huracán.

Al estar ante nuestra consideración la determinación sobre una concesión de sentencia sumaria parcial, pasaremos revisión inicial conforme a los estándares de la denegatoria o concesión de tal mecanismo procesal, en virtud de la Regla 36.1 de Procedimiento Civil.

En nuestra revisión *de novo*, nos corresponde analizar la solicitud de sentencia sumaria presentada por la parte apelada, así como la oposición de la parte apelante. Cabe destacar que los hechos materiales y esenciales acogidos por el foro primario se estudiarán a la luz del error presentado por la parte apelante sobre la existencia o inexistencia de un interés asegurable sobre las propiedades 259 Calle Fortaleza y 250 Calle Tanca.

Según el expediente y las determinaciones de hechos propuestas por la parte apelada, las partes suscribieron un contrato de póliza de seguro con cobertura para remediar daños de naturaleza ciclónica. Dicha cobertura, aplicable ante la eventualidad de daños provocados por vientos huracanados, incluía varias propiedades; entre ellas, 259 Fortaleza y 250 Tanca. Al momento del paso del huracán María, las primas habían sido pagadas por la parte apelante, por lo que la cobertura estaba vigente.

---

[17] Recordemos que a la controversia de autos le aplica el derogado Código Civil.

Según la prueba sometida a la consideración del foro primario, al momento del paso del ciclón tropical, UGF, LLC era titular de 259 Fortaleza, mientras que 250 Tanca, LLC era el titular de 250 Calle Tanca[18]. Ninguna de estas dos compañías aparece como persona asegurada en la póliza de seguro 88-CP-000307790-2. El contrato de seguro 88-CP-000307790-2 que figura en el expediente muestra como personas aseguradas a "Cherif R. Medawar &/or Original Resources, Inc. DBA: &/or 204 San Justo, LLC"[19].

A continuación, revisitamos los hechos no refutados por la parte apelante, según determinados en la *Resolución* del 7 de enero de 2025[20]:

> Es un hecho incontrovertible e irrefutable que, para la fecha del Huracán María, 20 de septiembre de 2017, la propiedad ubicada en 259 Fortaleza era propiedad de UGF LLC, mientras que la propiedad que ubica en 250 Tanca era propiedad de 250 Tanca LLC. Es decir, para la fecha del siniestro, Medawar no era dueño de ninguna de las propiedades. Tales hechos no fueron refutados por Medawar.

Los hechos propuestos y la evidencia presentada por la parte promovente, en este caso, la aseguradora, conducen a la no existencia de controversia real. Adicionalmente, la parte apelante no los controvirtió. En conclusión, la determinación sobre sentencia sumaria emitida por el foro primario fue realizada conforme a derecho.

Ahora, corresponde atar los hechos previamente reseñados a la controversia sobre el interés asegurable.

El Tribunal Supremo se ha expresado en múltiples ocasiones sobre la relación entre aseguradora y asegurado. En cuanto a ello, ha dispuesto que la misma es una de naturaleza contractual, que se rige por lo pactado en el contrato de seguro, "que constituye la ley entre las partes". *TOLIC v. Febles Gordián*, 170 DPR 804, 812 (2007).

En el caso ante nuestra consideración, concluimos que, sobre las propiedades 259 Fortaleza y 250 Tanca, el interés asegurable lo ostentan las personas jurídicas UGF, LLC, y 250 Tanca, LLC, respectivamente. Sin

---

[18] *Véase*, apéndice del recurso, a las págs. 1082, 1151-1152; i.e., transcripción de la toma de deposición al Sr. Cherif R. Medawar del 25 de octubre de 2023.

[19] *Véase*, nota al calce número 2, *ante*.

[20] *Véase*, SUMAC, entrada 224.

embargo, el pago de una póliza no es un acto sustitutivo automático de una persona natural o jurídica sobre las condiciones pactadas, máxime, cuando la rigurosidad en la gestión de la industria de seguros persigue desalentar reclamaciones ilícitas. Los términos de la póliza no incluyen la sustitución o transferencia a UGF, LLC, y 250 Tanca, LLC, en caso de reclamación. Por esa razón, sostenemos nuestra determinación previa en el caso KLAN202000931 sobre UGF, LLC. Aunque dicha corporación ostente un interés asegurable sobre una propiedad cubierta por la póliza en disputa, al no figurar como asegurado, no se le extiende su protección.

La parte apelante no puso al tribunal en posición de determinar que existiera un acuerdo de póliza a nombre de UGF, LLC, o de 250 Tanca, LLC. Tampoco demostró que el acuerdo entre las partes contemplara la transferencia de la póliza de seguro 88-CP-000307790-2 a cualquier otra entidad. Según lo presentado en el caso, UGF, LLC, y 250 Tanca, LLC, son personas jurídicas ajenas al contrato de póliza suscrito entre Cherif R. Medawar &/or Original Resources, Inc. DBA: &/or 204 San Justo, LLC, y Multinational. Por ende, quedan excluidas como reclamantes de la protección que extiende la póliza de seguro 88-CP-000307790-2, puesto que no existía pacto que incluyera a UGF, LLC, ni a 250 Tanca, LLC, en esa póliza y **al momento del suceso que provoca la reclamación**, como jurisprudencialmente lo establece *Merino v. Globe Rutgers Fire Insurance Co.,* 35 DPR 397 (1926). Por lo tanto, Cherif R. Medawar &/or Original Resources, Inc. DBA: &/or 204 San Justo, LLC, quedan impedidas de reclamar interés asegurable sobre 259 Fortaleza y 250 Tanca conforme a la póliza 88-CP-000307790-2. Las partes con interés asegurable sobre ellas, las compañías UGF, LLC, y 250 Tanca, LLC, serían las personas jurídicas legitimadas a reclamar, si hubiera existido un vínculo aseguradora-asegurado mediante contrato de seguro específico entre las partes.

No habiéndose cometido el error apuntado por la parte apelante, procede que confirmemos la *Sentencia Parcial* dictada.

IV

Por los fundamentos antes expuestos, confirmamos el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones