Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| RENÉ PINTO LUGO y OTROS<br>Apelantes<br><br>v.<br><br>IVONNE ÁLVAREZ VÉLEZ y OTROS<br>Apeladas | KLAN202500060 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2017CV02999<br><br>Sobre: *Injunction* Preliminar y Permanente, Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 12 de enero de 2026.

Comparece el Sr. René Pinto Lugo, Myrna López González y la Sociedad Legal de Bienes Gananciales compuesta por ambos (parte apelante o apelantes), mediante recurso de apelación. Solicitan la revocación de una *Sentencia Enmendada*, emitida el 24 de diciembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante dicho dictamen, el foro *a quo* declaró *Ha Lugar* la *Moción de Desestimación y de Sentencia Sumaria*, presentada el 20 de marzo de 2024 por Triple-S Propiedad, Inc., (Triple S).

Examinadas las controversias alzadas, hemos decidido *Revocar* la *Sentencia Sumaria Parcial* apelada, por los fundamentos que expondremos a continuación.

## I. Resumen del tracto procesal

El asunto ante nosotros es secuela de una intervención previa de este foro intermedio, en el caso identificado con el alfanumérico KLAN202300434, dirimido mediante *Sentencia* de 17 de julio de 2023. Según expusimos en aquella ocasión, el caso de epígrafe tuvo su

Número Identificador

SEN2025 _____

génesis en una *Petición de Injunction Preliminar y Permanente Demanda* (Demanda) instada por la parte apelante el 26 de diciembre de 2017, en contra de la Sra. Ivonne Álvarez Vélez (señora Álvarez Vélez), y de la Lcda. Ada M. Conde Vidal (señora Conde Vidal), (en conjunto, las demandadas), por alegados daños y perjuicios sufridos. En resumen, se alegó que las señoras Álvarez Vélez y Conde Vidal residían en el apartamento 9-A del Condominio Lakeshore en Santurce, y que poseían y convivían con seis (6) perros, cuyos ladridos y ruidos excesivos eran de naturaleza continua, que impedían que la parte apelante disfrutara en paz y tranquilidad su apartamento 8-A, ubicado justo debajo del apartamento mencionado.

Tras un muy prolongado proceso, con abundantes incidencias procesales, —incluyendo paralizaciones por haberse trasladado el caso a la esfera federal, peticiones de quiebra, y solicitudes de recusación—, el 23 de julio de 2020, las partes sometieron conjuntamente ante el TPI una *Estipulación y Solicitud de Sentencia/Resolución.* A través de esta, las demandadas acordaron el cese de las molestias que ocasionaban sus mascotas a la parte apelante, y el fiel cumplimiento con el Reglamento del Condominio Lakeshore. De igual forma, las demandadas se allanaron a que se dictara sentencia a favor de los apelantes, sobre todas las alegaciones vertidas en la *Demanda* en cuanto al interdicto, solo restando dirimir la reclamación por daños y perjuicios.

De conformidad, el 30 de julio de 2020, el TPI dictó *Sentencia Parcial* acogiendo la estipulación de las partes en cuanto al trámite extraordinario, y refiriendo el expediente a la sala civil de daños.

No obstante, el 3 de mayo de 2021, la parte apelante presentó una *Moción Solicitando Autorización para Presentar Demanda Enmendada,* con el propósito de incluir a Triple S como aseguradora de las demandadas y deudora solidaria. A su vez, solicitó que se añadieran las causas de acción por libelo, difamación y abuso de los

procedimientos judiciales en la causa de acción contra las demandadas. Por último, solicitó la imposición del pago de las costas, gastos, intereses legales y honorarios de abogado por temeridad.

En respuesta, el 2 de septiembre de 2021, el foro primario emitió una *Orden* autorizando la *Demanda Enmendada.*

Luego, el 10 de noviembre de 2021, la parte apelante presentó una *Moción en Cumplimiento de Orden*, junto a una *Segunda Demanda Enmendada,* a los fines de proveer una exposición más definida de sus alegaciones.

Ante la cual, tanto las demandadas, como Triple S, presentaron sus respectivas *Contestación a Segunda Demanda Enmendada.* En lo pertinente al asunto ante nuestra consideración, en su contestación a demanda enmendada Triple S levantó entre sus defensas afirmativas: que la póliza cubre a su asegurado de las reclamaciones de terceros que esté legalmente obligado a pagar, siempre que sean conforme al acuerdo de seguro, cláusulas, exclusiones y límites allí dispuestos; se reservaba el levantar defensas adicionales específicas de cubierta, una vez concluyera el descubrimiento de prueba y se determinara el origen de los daños alegados.[1]

Luego de ciertas incidencias procesales, el 5 de agosto de 2022, la señora Álvarez Vélez presentó una *Moción de Sentencia Sumaria Parcial,* en la que argumentó que las reclamaciones por difamación y persecución maliciosa o abuso del derecho habían prescrito y eran improcedentes en derecho. Asimismo, el 8 de agosto de 2022, la señora Conde Vidal presentó una *Moción Uniéndonos a Moción de Sentencia Sumaria.* En esta, además de unirse a los planteamientos ya argüidos por la señora Álvarez Vélez, la señora Conde Vidal esgrimió que la reclamación de la *Demanda* original se dirigía exclusivamente hacia la señora Álvarez Vélez, por ser la dueña de los animales objeto de la

---

[1] Entrada Núm. 163 de SUMAC.

reclamación, no a ella. Finalmente, esta última esgrimió que la reclamación era una de cobro de dinero, pero no era líquida ni exigible.

Ello provocó que la parte apelante presentara *Oposición a Solicitudes de Sentencia Sumaria Parcial de las codemandadas Ivonne Álvarez Vélez y Ada M. Conde Vidal.*

Triple S no presentó moción dispositiva en esta etapa de los procesos.

Así las cosas, el 17 de marzo de 2023, el foro primario emitió una *Sentencia Sumaria Parcial,* acogiendo parcialmente la moción dispositiva instada por las demandantes. Relevante para la controversia ante nuestra atención, valga mencionar que el TPI enumeró treinta y cinco hechos como incontrovertidos, entre los cuales incluyó el acuerdo alcanzado por las demandadas y los apelantes para disponer del remedio interdictal. Dispuesto esto, y luego de explicar y aplicar el derecho que juzgó procedente, entonces el foro apelado dictaminó lo que sigue:

> … se desestima la causa de acción por difamación y libelo, persecución maliciosa y el uso indebido de los procedimientos legales. Consecuentemente, se ordena la continuación de los procedimientos para la valorización de los daños alegados por René Pinto Lugo y Myrna López González, en lo que respecta a la co-deudora Ana M. Conde Vidal.[2]

Ante ello, la parte apelante solicitó la reconsideración del referido dictamen, específicamente en torno a la desestimación de las causas de acción de difamación y libelo, persecución maliciosa y uso indebido de los procedimientos.

Aunque por razones distintas, la señora Conde Vidal también solicitó reconsideración sobre el mismo dictamen, y, a su vez, se opuso a la petición de la parte apelante. Además, el 13 de abril de 2023, la señora Álvarez Vélez presentó su oposición a la moción de reconsideración presentada por la parte apelante.

El TPI declaró *No Ha Lugar* las referidas reconsideraciones.

---

[2] Apéndice del recurso de apelación, pág. 33.

Inconforme, la parte apelante presentó un recurso de apelación, al cual se le asignó el alfanumérico KLAN202300434.

Luego de que la señora Álvarez Vélez presentara su alegato en oposición a dicho recurso de apelación, este foro intermedio emitió *Sentencia* confirmatoria de la *Sentencia Sumaria Parcial* apelada, el 17 de julio de 2023.[3]

Continuando los procesos ante el TPI, el 6 de octubre de 2023, dicho foro celebró una *Conferencia sobre Estado de los Procedimientos*, a la cual no compareció la representación legal de Triple S.[4] El mismo día fue dictada una *Orden de Calendarización*, concediendo el Tribunal a las partes hasta el 15 de diciembre de 2023 para concluir el descubrimiento de prueba, disponiendo que, lo que no se descubriera antes de dicha fecha, se entendería renunciado.[5]

Con todo, el 2 de febrero de 2024, la parte apelante presentó una *Moción Urgente*, solicitando que se dejara sin efecto la celebración de la Conferencia con Antelación a Juicio y Vista Transaccional pautada para igual fecha en horas de la tarde.[6] Basó su petición en que, al lograr acceso en la mañana al Informe de Conferencia con Antelación al Juicio integrado por todas las partes (Informe), se percató de que, luego de la estipulación y *Sentencia Parcial*, la cual era final y firme, se incorporó por primera vez documentación, testigos, y teorías que no fueron antes expresadas o notificadas.

A pesar de ello, el TPI celebró, según pautada, la Conferencia con Antelación a Juicio y Vista Transaccional mediante videoconferencia. Como resultado, ese mismo día el TPI emitió otra *Orden de Calendarización*, concediéndole a Triple S hasta el 1 de marzo de 2024 para presentar moción dispositiva.[7]

---

[3] El 23 de enero de 2024 se recibió el mandato del Tribunal de Apelaciones en el caso KLAN202300434, al igual que el del Tribunal Supremo. Véase entradas núm. 243 y 244 de SUMAC.
[4] Véase entrada núm. 224 de SUMAC.
[5] Véase entrada núm. 223 de SUMAC.
[6] Véase entrada núm. 254 de SUMAC.
[7] Véase entrada núm. 255 de SUMAC.

En el mismo mes, 23 de febrero de 2024, la parte apelante presentó una *Moción Urgente Solicitando Exclusión de Toda Alegación y Evidencia que No Esté Relacionada a la Determinación de Daños.*[8] Adujo que había sido Triple S quien incluyó por primera vez en el *Informe* nuevas teorías, negando absolutamente cubierta bajo los términos de su póliza y anunciando un testigo que habría de ofrecer testimonio sobre la fundamentación de la negatoria de cubierta. Sostuvo que, lo anterior, no solamente violaba las órdenes del Tribunal y el deber de buena fe, sino que le despojaba de llevar a cabo un descubrimiento de prueba y, esencialmente, reabría una litigación en un caso radicado hace más de cinco años.[9]

Mediante *Orden* de 26 de febrero de 2024, el foro de instancia atendió la referida *Moción urgente*, disponiendo que no tenía nada que proveer y que, una vez Triple S presentara la moción dispositiva, la parte apelante tendría oportunidad de presentar su oposición.[10]

Luego de habérsele concedido dos prórrogas, el 20 de marzo de 2024, Triple S presentó *Moción de Desestimación y de Sentencia Sumaria.* En esta, enumeró veintitrés hechos, identificados como esenciales y en los que no había controversia sustancial. Entonces, Triple S esgrimió su teoría legal sobre por qué razón en este caso se activó una cláusula de exclusión contenida en la póliza, que justificaba la disposición de la causa de acción por la vía sumaria.[11] En lo pertinente, Triple S esgrimió que:

> … si el daño provocado es esperado o intencional está excluido y no se activa la póliza, ya que tiene que ser por un "ocurrence" cubierto en la póliza. El análisis es sencillo, ¿Es esperado que si al recibir quejas de los demandantes por los ruidos de seis perros y no tomar medidas continuarían las molestias de los demandantes? La contestación es que es totalmente esperado y el hecho de desconocer la cantidad de

---

[8] Véase entrada núm. 266 de SUMAC.
[9] *Id.*
[10] Véase entrada núm. 267 de SUMAC.
[11] Debe saberse que Triple S también arguyó que se debía disponer sumariamente de la causa de acción, porque la asegurada era la codemandada Ivone Álvarez Vélez y, al desestimarse la Demanda contra esta, ya no cabía imputársele responsabilidad a su aseguradora. Esta controversia fue expresamente resuelta en contra de Triple S en la Sentencia apelada, y no forma parte de los señalamientos de error alzados ante nosotros, de aquí que nos limitemos a su sola mención en esta nota al calce.

daño y/o el tipo de daño que le causaba a los vecinos o si se afecta alguien o algo inesperado por dichas acciones no derrota dicha exclusión. De los hechos expuestos en la sentencia y la extensión de los procesos judiciales no es posible llegar a otra conclusión de que el estorbo definitivamente no fue accidental, si no esperado y no sería irrazonable que alguien pudiera incluso concluir que hubo elementos intencionales al no actuar para mitigar la situación luego de ser advertido.[12]

En respuesta, el TPI emitió una *Orden* determinando que la moción de sentencia sumaria instada por Triple S fue tardía.[13]

Por consiguiente, Triple S presentó una *Moción Urgente Solicitando Reconsideración sobre Moción de Desestimación y Sentencia Sumaria,* solicitándole al foro primario que aceptara el escrito aludido.[14]

El 21 de marzo de 2024 el foro de instancia acogió la reconsideración, y concedió un término a las demás partes para oponerse a la moción dispositiva pendiente.[15]

En igual fecha, la parte apelante presentó una *Moción de Desistimiento contra Ada Conde Vidal y Moción de No Oposición a Que Se Considere Solicitud de Sentencia Sumaria de Triple S.*[16] Conforme se desprende de su título, la parte apelante solicitó el desistimiento voluntario sin perjuicio contra la señora Conde Vidal, con el propósito de evitar que se paralizaran los procedimientos, al esta haberse acogido a un procedimiento de quiebras. **En lo que respecta a la *Moción de Sentencia Sumaria* presentada por Triple S, la parte apelante no se opuso a que el TPI la considerara, sin embargo, sostuvo que presentaría su oposición dentro del término concedido**.

En lo relativo a la solicitud de desistimiento, el foro primario emitió una *Orden,* refiriendo a la parte a la *Sentencia Parcial* del 21 de marzo de 2024, donde ya había dispuesto sobre la paralización de los

---

[12] Entrada núm. 298 de SUMAC.
[13] Véase entrada núm. 289 de SUMAC.
[14] Véase entrada núm. 291 de SUMAC.
[15] Véase entrada núm. 292 de SUMAC.
[16] Véase entrada núm. 294 de SUMAC.

procedimientos instados en contra de la señora Conde Vidal, por haberse acogido a la Ley de Quiebras.[17]

El 5 de abril de 2024, la parte apelante presentó una *Réplica en Oposición a Solicitud de Sentencia Sumaria de Triple S y Solicitud de Sentencia Sumaria en Contra de Triple S*.[18]   Inició este escrito aduciendo que el caso debía encontrarse "en su etapa final de juicio para la determinación de daños, pues las demás controversias quedaron *de facto* y *de jure* bifurcadas habiendo este Honorable Tribunal emitido las determinaciones materiales de hechos, y emitido Sentencia Parcial el 17 de marzo de 2023 imponiendo la responsabilidad de las partes demandadas".[19] Seguido, sostuvo que la *Contestación a la Segunda Demanda Enmendada* resultó ser vaga e insuficiente y que la reservación de derechos realmente se refería a las causas de acción por libelo, difamación, persecución maliciosa y abuso de los procedimientos legales, que fueron desestimadas por el TPI. Añadió que la aludida "[reserva] de derechos" no guardaba relación alguna con la denegatoria de cubierta que Triple S ocultó o no divulgó en su alegación responsiva por los daños resultantes de los ruidos y ladridos de los siete perros y el guacamayo a diferentes horas del día y de la noche durante aproximadamente 7 años. Arguyó sobre las razones por las cuales no aplicaba la cláusula de exclusión esgrimida por Triple S, con relación al concepto de *ocurrencia*, a la vez que explicó con amplitud por qué los daños alegados ubicaban dentro de la acepción de *bodily injury, sickness or disease* incluida en la misma póliza, y afirmó que bajo las ofensas previstas en la póliza denominadas *personal injury,* se incluía la invasión a la privacidad e intimidad personal, lo que estaba vinculado con el derecho a la tranquilidad, serenidad y disfrute del hogar.

---

[17] Véase entradas núm. 293 y 295 de SUMAC.
[18] Véase entrada núm. 298 de SUMAC.
[19] *Id.*

Es así como, el 17 de octubre de 2024, el TPI emitió la *Sentencia* cuya revocación nos solicita la parte apelante, declarando *Ha Lugar* la *Moción De Desestimación y de Sentencia Sumaria* presentada por Triple S. A pesar de haber determinado que las partes no cumplieron con los requisitos dimanantes de las Reglas de Procedimiento Civil al presentar una moción de sentencia sumaria y el escrito en oposición a esta, realizó la siguiente determinación de hechos, a partir de la prueba documental disponible en el expediente:

1. Triple S- Propiedad (TSP) emitió la póliza de seguro número PP-41069876 (en adelante, póliza) a nombre de la asegurada Ivonne Álvarez Vélez.[20]

2. La póliza fue renovada para el periodo que se extiende desde el 23 de julio de 2015 hasta el 23 de julio de 2016.[21]

3. La póliza incluye cubiertas bajo las secciones de *Property y Liability*.[22]

4. La póliza provee una cubierta de responsabilidad pública de $500,000.00 y gastos médicos de $5,000.00 para la propiedad Condominio Lakeshore Apto. 9A, 1 Calle Madrid, San Juan, PR 00907.[23]

5. La sección de *Definitions* de la póliza indica que el "asegurado nombrado" incluye al cónyuge, si este reside en el mismo hogar.[24]

6. La sección de *Definitions* de la póliza indica que una "lesión corporal" significa un daño corporal, una enfermedad o condición, e incluye muerte como su resultado.[25]

---

[20] Personal Package Policy, **Anejo 1, pág. 1**, *Moción de desestimación y sentencia sumaria*, SUMAC 288.
[21] Personal Package Policy, Renewal Certificate, **Anejo 1 pág. 25**, *Moción de desestimación y sentencia sumaria*, SUMAC 288.
[22] Personal Package Policy, **Anejo 1, págs. 2-3**, *Moción de desestimación y sentencia sumaria*, SUMAC 288.
[23] Personal Package Policy, **Anejo 1, pág. 27**, *Moción de desestimación y sentencia sumaria*, SUMAC 288. Dicha sección dispone:
    DESCRIPTION AND LOCATION OF THE COVERED PROPERTY:
    LOCAL 1: ONE STORY condo unit contents, ONE FAMILY, located at
    COND LAKESHORE APTO 9A, 1 CALLE MADRID, SAN JUAN, PR
    00907
    [...]
    E. PERSONAL LIABILITY: $500,000.00
    F. MEDICAL PAYMENTS: $5,000.00
[24] Conditions Applicable to all Sections, **Anejo 1, pág. 54**, *Moción de desestimación y sentencia sumaria*, SUMAC 288. Dicha sección dispone:
    Definitions
    Throughout this policy, "you" and "your" refer to the "named insured"
    shown in the Declarations, and the spouse if a resident of the same
    household.
[25] Conditions Applicable to all Sections, **Anejo 1, pág. 54**, *Moción de desestimación y sentencia sumaria*, SUMAC 288. Dicha sección dispone:
    D. "Bodily injury" means bodily harm, sickness or disease, including
    death that results.

7. Las secciones de *Property* y *Liability* de la póliza disponen que el asegurado incluye a los residentes de la vivienda asegurada que sean parientes del asegurado.[26]

8. Las secciones de *Property* y *Liability* de la póliza disponen que "ocurrencia" significa un accidente que ocasione lesiones corporales o daños a la propiedad, e incluye situaciones continuas o repetitivas que expongan sustancialmente a una persona a condiciones ordinariamente perjudiciales.[27]

9. La sección de *Liability* de la póliza define "lesión corporal" como un daño corporal, una enfermedad o condición, e incluye tratamiento médico requerido, pérdida de servicio o muerte como resultado.[28]

10. En relación con animales, la sección de *Liability* de la póliza indica que un asegurado incluye cualquier persona u organización legalmente responsable por los animales en cuestión.[29]

11. La sección de *Liability* de la póliza indica que la definición de "lesión corporal" bajo la cubierta de responsabilidad civil incluye una "lesión personal". Una "lesión personal" significa lesiones que surjan de una o más de las siguientes ofensas: (1) arresto, detención o encarcelamiento ilegal; (2) persecución maliciosa; (3) libelo, calumnia o difamación; (4) invasión de privacidad, desahucio ilegal, o traspaso ilegal.[30]

---

[26] Conditions Applicable to all Sections, **Anejo 1, págs. 55 y 57**, *Moción de desestimación y sentencia sumaria*, Entrada SUMAC 288. Dicha sección dispone: "Insured" means:
    1. You and residents of your household who are:
    a. Your relatives; or
    b. Other person under the age of 21 and in the care of any person named above.

[27] Conditions Applicable to all Sections, **Anejo 1, pág. 55**, *Moción de desestimación y sentencia sumaria*, Entrada SUMAC 288. Dicha sección dispone:
    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
    1. Bodily injury; or
    2. Property damage.

[28] Conditions Applicable to all Sections, **Anejo 1, pág. 57**, *Moción de desestimación y sentencia sumaria*, Entrada SUMAC 288. Dicha sección dispone:
    "Bodily injury" means bodily harm, sickness or disease, including required care, loss of service and death that results.

[29] Conditions Applicable to all Sections, **Anejo 1, pág. 57**, *Moción de desestimación y sentencia sumaria*, Entrada SUMAC 288. Dicha sección dispone:
    **"Insured" means: 1. You and residents of your household who are:**
    a. **Your relatives;** or
    b. Other person under the age of 21 and in the care of any person named above.
    2. […]
    **3.** Under **Section III (Liability):**
    a. **With respect to animals** or watercraft to which this policy applies, **any person or organization legally responsible for these animals** or watercraft which are owned by you or any person included in a. or b. above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner. (Énfasis en el original).

[30] Conditions Applicable to all Sections, **Anejo 1, pág. 58**, *Moción de desestimación y sentencia sumaria*, Entrada SUMAC 288. Dicha sección dispone:
    "Personal Injury"
    This company agrees that, under Coverage A-Personal Liability-the definition [of] "Bodily Injury" include[s] "Personal Injury".
    "Personal Injury" means injury arising out of one or more of the following offenses:
    1. False arrest, detention or imprisonment, or
    2. Malicious prosecution;
    3. Liber, slander or defamation of character; or

12. La sección *Coverage A- Personal Liability* de la póliza contiene una exclusión de cubierta de responsabilidad, al disponer que no se aplicará la cubierta en casos en que la "lesión corporal" sea esperada o intencional ("expected or intended injury"), aunque dicha lesión corporal sea de un tipo o grado mayor que el esperado y/o padecido por otra persona que la esperada.[31]

13. Para el periodo en que se suscitó la controversia de epígrafe, Ada M. Conde Vidal residía, por sus propios dichos, en el apartamento 9-A del Condominio Lakeshore.[32]

(En su contenido, las notas al calce 20 a la 32 que preceden, son copia *verbatim* de las enumeradas por el TPI en su Sentencia Enmendada).

Realizado el anterior ejercicio, y luego de exponer el derecho pertinente, el foro apelado determinó que, según la póliza expedida, resultaba de aplicación una cláusula de exclusión contenida en el seguro de responsabilidad pública, que explicó de la siguiente manera:

De las determinaciones de hechos incontrovertidas, se desprende que las codemandadas Álvarez Vélez y Conde Vidal

---

4. Invasion of privacy, wrongful eviction or wrongful entry.

[31] Conditions Applicable to Sections III-Liability Coverage, **Anejo 1, pág. 71**, *Moción de desestimación y sentencia sumaria*, Entrada SUMAC 288. Dicha sección dispone:
> E. Coverage A – Personal Liability and Coverage B – Medical Payments
> to Others Coverage A and B do not apply to the following:
> 1. Expected or Intended Injury
> "Bodily injury" or "property damage" which is expected or intended by an "Insured" even if the resulting "bodily injury" or "property damage":
> a. Is of a different kind, quality or degree than initially expected or intended; or
> b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.
> However, this exclusion E.1. dies not apply to "bodily injury" resulting from the use of reasonable force by an Insured to protect persons or property.

[32] A modo de ejemplo, véase *Moción Paralización* presentada por Conde Vidal, SUMAC 14. El **Anejo 1, Complaint (Case 3:18-cv-01042),** constituye la demanda presentada en el Tribunal Federal para el Distrito de Puerto Rico, donde esta asevera lo siguiente:
> **I, Ada Mercedes Conde Vidal and Plaintiff, reside in** San Juan, Commonwealth of Puerto Rico with her wife in **Lakeshore Condominium, Apartment 9-A, 1 Madrid St.,** San Juan, Puerto Rico. (Énfasis en el original).

Véase también, *Moción de desestimación* presentada por Conde Vidal, SUMAC 152. El **Anejo 1**, Estipulación, indica lo siguiente:
> 1. [...] Dicho procedimiento [...] que ha presentado la parte demandante en atención a los ruidos provocados por los perros que poseían las demandadas mientras ambas estaban casadas y vivían en el Apartamento 9-A del Condominio Lakeshore, en Miramar, San Juan, Puerto Rico. (Énfasis en el original).

Véase también, *Moción de sentencia sumaria parcial* presentada por Conde Vidal, SUMAC 184. El **Anejo 3, pág. 5,** Opinion and Order, indica lo siguiente:
> On January 25, 2018, plaintiffs, Ada Mercedes Conde Vidal and Ivonne Alvarez Velez filed a Complaint seeking a declaratory relief from the Court that they "have been discriminated, persecuted and harassed by defendants due to [their] physical and/or emotional and/or mental conditions as also [their] marital status in violation of the Fair Housing Act." [...] **The controversy** between plaintiffs and defendants **arises out of plaintiffs' possession of seven (7) dogs, two (2) parrots and one (1) macaw ("Guacamayo") in an apartment located at Lakeshore Condominium** and the alleged noises produced by said pets. (Énfasis en el original).

tenían conocimiento del estorbo de sus mascotas y los daños que esto ocasionaba a sus vecinos. Previo a la presentación de esta demanda ante los tribunales, la Junta de Directores del Condominio Lakeshore había intervenido e impuesto multas a las codemandadas por infracciones al Reglamento del Condominio. Es por ello que resulta indiscutible que los "daños corporales" ocasionados a Pinto Lugo son excluidos de la cubierta de responsabilidad pública por ser "esperados" por las aseguradas.[33]

Luego de que la parte apelante solicitara la reconsideración del dictamen aludido, con la oposición de Triple S, el TPI la declaró *No Ha Lugar*. No obstante, el foro de instancia emitió una *Sentencia Enmendada* a los únicos efectos de eliminar la palabra "previsible" del primer párrafo de la página 11 de su dictamen anterior.

En desacuerdo, el 23 de enero de 2025, la parte apelante presentó el recurso de apelación que nos ocupa, alzando los siguientes errores:

> Primer error: Erró el Tribunal de Primera Instancia (TPI) al determinar que los daños causados por los actos de las codemandadas aseguradas de Triple S fueron de naturaleza intencional y por consiguiente no están cubiertos bajo la póliza(s) emitida por la aseguradora Triple S.

> Segundo error: Erró el TPI al no reconocer determinar que los daños reclamados están específicamente cubiertos bajo la sección de cubierta para el grupo ofensas denominadas como invasión a la privacidad/intimidad de la póliza(s) emitida por la aseguradora Triple S.

> Tercer error: Erró el TPI al no determinar que Triple S incurrió en una conducta de mala fe, siéndole además de aplicación las doctrinas de waiver (renuncia) y estoppel (impedimento).

A su vez, Triple S compareció mediante *Alegato en Oposición a Apelación.*

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II. Exposición de derecho

### A. Sentencia Sumaria

La sentencia sumaria "vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición

---

[33] Apéndice del recurso de apelación, Sentencia Enmendada, pág. 100.

justa, rápida y económica de los litigios civiles". *Ramos Pérez v. Univisión*, 178 DPR 200, 220 (2010). Por lo tanto, el principio rector que debe guiar al juez de instancia en la determinación sobre si procede o no la sentencia sumaria es "el sabio discernimiento", ya que si se utiliza de manera inadecuada puede prestarse para privar a un litigante de su día en corte, lo que sería una violación a su debido proceso de ley. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327-328 (2013).

### i. Función revisora del foro apelativo con respecto a la sentencia sumaria dictada por el foro primario

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias, o resolución que deniega su aplicación, este foro intermedio se encuentra en la misma posición que el foro primario para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 115 (2015). Los criterios que debemos seguir al atender la revisión de una sentencia sumaria dictada por el foro de instancia han sido enumerados con exactitud por nuestro Tribunal Supremo. *Id.*, págs. 118-119; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018). A tenor, el Tribunal de Apelaciones debe:

> 1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;
> 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;
> 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;
> 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Id.,* pág. 679.

Sin embargo, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras: (1) solo podemos considerar los documentos que se presentaron ante el foro

de primera instancia; (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra, pág. 118. El primer punto se enfoca en el principio de que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. *Id.*, pág. 115. Por su parte, el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlas. *Id.*

A tenor, la Regla 36.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, especifica los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En suma, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. *Id.* Ahora bien, "es esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos medulares del caso". *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 993 (2024); *Zambrana García v. ELA*, supra, pág. 341-342; *Jusino et al. v. Walgreens*, 155 DPR 560, 577 (2001).

En contraste, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. Regla 36.3 (b) de las de Procedimiento Civil, *supra.* De aquí que la parte que se opone a que se dicte sentencia sumaria no puede descansar exclusivamente en sus alegaciones, ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.,* 177 DPR 369, 383 (2009). Por el contrario, debe controvertir la prueba presentada por la parte

solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía,* 168 DPR 127, 138 (2006). Ello se puede lograr a través de contradeclaraciones juradas y contradocumentos que pongan en entredicho los hechos presentados por el promovente. *Ramos Pérez v. Univisión P.R., Inc.,* supra, pág. 215, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

Al considerar una moción de sentencia sumaria, se tendrán como ciertos los hechos no controvertidos que descansen en la prueba documental presentada por la parte promovente. *Díaz Rivera v. Srio. de Hacienda*, 168 DPR 1, 27 (2006). Así, nuestro más alto foro ha establecido que, "a menos que las alegaciones contenidas en la moción de sentencia sumaria queden debidamente controvertidas, éstas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien promueve". *Meléndez González, et al. v. M. Cuebas*, supra, pág. 137; Reglas 36.3(c) y 36.3(d) de Procedimiento Civil de 2009, *supra*.

Sin embargo, "toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". *ELA v. Cole,* 164 DPR 608, 626 (2005). Por ello, **cuando exista la más mínima duda o controversia sobre hechos materiales o esenciales del caso, el tribunal denegará la sentencia sumaria y deberá celebrar un juicio en su fondo**. *Díaz Rivera v. Srio. de Hacienda*, supra, pág. 27. (Énfasis provisto). Ello debe ser visto a la luz de que **la mera existencia de "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria … cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente**". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). (Énfasis provisto).

Por último, al determinar "si existen controversias de hechos que impiden dictar una sentencia sumaria, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal". *Ramos Pérez v. Univisión*, supra, pág. 216 citando a *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 591 (2007).

### B. El contrato de seguro

En nuestra jurisdicción la industria de los seguros está revestida de un gran interés público debido a su importancia, complejidad y efecto en la economía y la sociedad. *Nevárez Agosto v. United Surety & Indemnity*, 209 DPR 346, 358 (2022); *Consejo de Titulares del Condominio Balcones de San Juan v. Mapfre Praico Insurance Co.* 208 DPR 761, 773 (2022). Por motivo de ello, esta industria es reglamentada extensamente mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como "Código de Seguros de Puerto Rico", 26 LPRA sec. 101 *et seq.*

Por su parte, el Art. 1.020 del Código de Seguros de Puerto Rico (Código de Seguros), 26 LPRA sec. 102, define el contrato de seguro como aquel "mediante el cual una persona se obliga a indemnizar a otra, o a pagarle, o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".

Sobre el contrato de seguros, el Tribunal Supremo ha expresado que:

> [e]s un mecanismo para enfrentar la carga financiera que podría causar la ocurrencia de un evento específico.
>
> Los aseguradores, mediante este contrato, asumen la carga económica de los riesgos transferidos a cambio de una prima. El contrato de seguros es, pues, un contrato voluntario mediante el cual, a cambio de una prima, el asegurador asume unos riesgos. La asunción de riesgos es, por lo tanto, uno de los elementos principales de este contrato. En resumen, en el contrato de seguros se transfiere el riesgo a la aseguradora a cambio de una prima y surge una obligación por parte de ésta de responder por los daños económicos que sufra el asegurado en caso de ocurrir el evento específico. *Cooperativa Ahorro y Crédito Oriental v. SLG*, 158 DPR 714, 721 (2003).

Cónsono con esto, la póliza configura el instrumento escrito donde quedan plasmados los términos que rigen el contrato de seguro. Art. 11.140 del Código de Seguros, 26 LPRA sec. 1114(1). En otras palabras, los términos estipulados en una póliza de seguro determinan los derechos y las obligaciones de las partes contratantes, y constituyen la ley que regirá entre ellas. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 989 (2023).

Con relación a las normas de interpretación de las pólizas, el Código de Seguros establece la norma de hermenéutica aplicable. *Echandi Otero v. Stewart Title*, 174 DPR 355, 369 (2008). Así, dicho cuerpo normativo dispone que "[t]odo contrato de seguro debe interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta". Art. 11.250 del Código de Seguros 26 LPRA sec. 1125. Por tanto, los principios de hermenéutica atinente a los contratos, según esbozados en el Código Civil, se utilizarán únicamente de manera supletoria. *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 898 (2012).

Entiéndase, corresponde interpretar el lenguaje plasmado en la póliza en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical. *Rivera Matos v. ELA,* 204 DPR 1010, 1020 (2020). Por consiguiente, **"al interpretarse la póliza, debe hacerse conforme a su propósito, o sea, ofrecer protección al asegurado"**. *Cooperativa de Ahorro y Crédito Oriental v. SLG*, 158 DPR 714, 723 (2003). (Énfasis provisto). De modo que, "**no se favorecerán interpretaciones sutiles que le permitan a la aseguradora evadir su responsabilidad**". *Id.* (Énfasis provisto). A tenor con tales principios, la labor de los tribunales consiste en **buscar el sentido y significado que les daría una persona de normal inteligencia**, que fuese a comprar la póliza, a las cláusulas en ésta contenidas. *Id.* (Énfasis provisto). De este modo

se garantiza que el asegurado que adquiere una póliza reconoce el alcance de la protección del producto. *Rivera Matos v. ELA*, supra, pág. 1020. En aquellos casos en los que surjan dudas en torno a la interpretación de los términos de una póliza, éstas deben resolverse de manera que se cumpla con su designio intrínseco, es decir, proveer protección al asegurado. *Maderas Tratadas v. Sun Alliance*, supra, pág. 898.

Como es de esperarse, "un seguro no responde por toda gestión imaginable del asegurado que pueda causar daño a terceros. La cubierta se circunscribe a determinadas actividades específicamente delimitadas en la póliza conjuntamente con las exclusiones allí dispuestas, donde se exceptúan ciertas actividades por las que no viene obligado a indemnizar". *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 DPR 521, (1991).

Como norma general, las disposiciones de los contratos de seguros deben ser interpretadas liberalmente a favor del asegurado por constituir un contrato de adhesión. *Maderas Tratadas v. Sun Alliance*, supra, pág. 898-899; *Monteagudo Pérez v. ELA*, 172 DPR 12, 21 (2007).

Por otra parte, al determinar qué riesgos se encuentran cubiertos por una póliza de seguro, es necesario considerar si en el contrato figura alguna "cláusula de exclusión". *Id.* Estas cláusulas tienen la finalidad de limitar la cubierta establecida en el acuerdo principal y disponen que el asegurador no responderá por determinados eventos, riesgos o peligros. *Id.* Por lo cual, en nuestro ordenamiento **las exclusiones son desfavorecidas y se interpretan restrictivamente en contra de la aseguradora para que se cumpla el propósito principal de los seguros que, según ya dijimos, es proteger al asegurado**. *W.M.M. v. Puerto Rico Christian Sch., Inc.*, 211 DPR 871, 873 (2023). (Énfasis provisto). Únicamente se exceptuarán aquellos riesgos que así aparezcan expresamente preceptuados en el contrato de seguro. *Maderas Tratadas v. Sun Alliance*, supra, pág. 915.

Además, el Tribunal Supremo ha advertido que corresponde a la aseguradora el peso probatorio para evidenciar la aplicación de alguna exclusión. *Rivera Matos v. ELA*, 204 DPR 1010, 1022 (2020).

Sin embargo, si la cláusula de exclusión es diáfana, libre de ambigüedad y aplica a determinada circunstancia, la aseguradora no está obligada a responder por esos riesgos excluidos. *Viruet et al v. SLG Casiano-Reyes*, 194 DPR 271 (2015).

**III. Aplicación del derecho a los hechos**

a.

Según advertimos en la sección que precede, al considerar una petición de sentencia sumaria, este foro intermedio está en idéntica posición que el tribunal *a quo* al sopesar tal escrito, y su oposición, de aquí que sea afirmado que nuestra revisión acontece *de novo*. En atención a lo cual, iniciamos por reconocer que, al examinar la moción de sentencia sumaria y su oposición, coincidimos con la expresión del foro primario en la *Sentencia* apelada[34], en cuanto a que *ninguna de las partes* mostró riguroso apego a los requisitos de forma de la Regla 36 de Procedimiento Civil, *supra.*

Elaborando, en su *Moción de Desestimación y de Sentencia Sumaria* Triple-S propuso 23 hechos como incontrovertidos. De estos, solo el número 9, y el 17, cumplen con los requisitos de forma contenidos en la Regla 36 de Procedimiento Civil, *supra.* En contraste, los hechos 1, 12, 20, 22 son conclusorios, mientras que los hechos numerados como 1, 3, 4, 5, 6, 8, 10, 14, 18, 19, 23 omitieron indicar los **párrafos o las páginas específicas** de las declaraciones juradas u otra prueba admisible en evidencia, incluyendo aquella que se encuentre en el expediente del tribunal, donde se establecieran los mismos, en franco incumplimiento con la Regla 36.3(a)(4) de Procedimiento Civil, 32 LPRA Ap. V. En el caso particular del hecho

---

[34] Apéndice del recurso de apelación, Sentencia Enmendada, página 99.

21, este nos dirige a la *Contestación a la Demanda Enmendada* de Triple S con la pretensión de que se tome **su propia alegación** como conclusión de que "no realizó ante los demandantes representación alguna de cubierta a parte de la contenida en la contestación a la demanda [...]", lo que no es aceptable bajo la regla procesal aludida. Por su parte, los hechos 2, 7, 11, 12, 13, 15, 16 no hicieron referencia a documento alguno para sostenerlos como incontrovertidos.

Peor aún, a pesar de que la teoría legal de Triple S para solicitar la desestimación sumaria del pleito descansó en la aseveración de que aplicaba una cláusula de exclusión de la póliza, por razón de que el daño alegado (los ruidos provocados por los perros), eran *intencionales o esperados*, es decir, no *accidentales*, en su propuesta de hechos incontrovertidos **no incluyó un solo documento para establecer tal intencionalidad**. La única alusión al estorbo que significaba el ladrido de los perros se encuentra en los incisos quinto y décimo de la lista de hechos propuestos como incontrovertidos en la referida moción, en el que se nos refiere al Exhibit 5 para su comprobación, (sin especificar párrafos ni página, como ya dijimos).[35] Dicho exhibit 5 es una declaración jurada de la codemandada, Ada Mercedes Conde Vidal, en la que, con relación a las mascotas, se limitó a indicar que nunca tuvo control de ninguno de los bienes de la codemandada, Ivone Álvarez Vélez, lo que incluía a los perros.[36] Más bien, la moción de sentencia sumaria aludió a los *hechos determinados y delimitados* en la Sentencia Sumaria Parcial, de 17 de marzo de 2023 (Sentencia Sumaria Parcial, en adelante)[37], para ver si se configuró una ocurrencia cubierta en la póliza, pero, de nuevo, sin especificar dónde en dicho dictamen se encontraban los hechos que sustentaban su argumento.

---

[35] Entrada SUMAC Núm. 288, pág. 6.
[36] *Id.*, Anejo 5.
[37] Apéndice del recurso de apelación, págs. 9-25.

Ante tales circunstancias, el Tribunal Supremo ha sido enfático en que, para que una sentencia pueda ser dictada sumariamente, **la parte promovente** tiene que establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre ningún hecho material, cosa que Triple S no logró. Visto lo cual, el TPI estaba en perfecta posición de denegar dicha moción dispositiva de plano, si así lo hubiese estimado.

De otro lado, quien se opone a la petición de sentencia sumaria tiene el deber de controvertir la prueba presentada por la parte promovente, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hospital Pavía*, 168 DPR 127, 138 (2006). Al intentar lograr su cometido, la parte apelante también se distanció de los requisitos de forma provistos por la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V. De modo concreto, no controvirtió los hechos propuestos por los peticionarios mediante una relación organizada, específicamente con referencia a los párrafos que para esos propósitos fueron enumerados por la parte promovente. A pesar de que incluyó sus teorías legales y hechos que le apoyaban, la parte apelante omitió incluir junto a su oposición a que se dictara sentencia sumariamente, la prueba documental que estableciera tales hechos.

Los incumplimientos con las formalidades de la Regla 36 de Procedimiento Civil, *supra*, aquí especificados de ordinario resultarían suficientes para determinar que la petición de sentencia sumaria debió ser denegada sin otra consideración, según advertimos. No obstante, resulta evidente que el TPI procedió a hacer sus propias determinaciones de hechos incontrovertidos, a partir de la documentación con la que contaba en el expediente. Parte de tal documentación lo era, sin duda, la propia Sentencia Sumaria Parcial, en la que el TPI ya había enumerado una serie de hechos incontrovertidos. Como es sabido, nuestro Tribunal Supremo ha

establecido que, al determinar si existen controversias de hechos, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria, los incluidos en la moción en oposición, **así como los que obren en el expediente del tribunal**. *Ramos Pérez v. Univisión Puerto Rico Inc.*, 178 DPR 200, 216 (2009). (Énfasis provisto).

A pesar de las evidentes deficiencias de la moción de sentencia sumaria aquí señaladas, tal como el tribunal *a quo*, juzgamos que, en efecto, la prueba documental que surge del expediente sostiene los hechos incontrovertidos enumerados en la Sentencia apelada, por cuanto estos esencialmente reproducen y traducen al español varios de los incisos contenidos en la póliza. De conformidad, nos aprestamos a interpretar los incisos pertinentes de la póliza, según fueron identificados en la Sentencia apelada, a los cuales aludiremos al ser discutidos.

b.

Con el propósito de dirigir nuestros esfuerzos al tema central, la interpretación de la exclusión contenida en la póliza, disponemos primero del tercer señalamiento de error, donde fue argüido que Triple S incurrió en actos de mala fe, y le era de aplicación las doctrinas de *waiver* y *estoppel,* al esgrimir, por primera vez, la presunta *no cubierta* de la póliza en una etapa muy avanzada del pleito.

Juzgamos que el error no fue cometido, pues en su contestación a demanda, Triple S esgrimió como defensa la aplicación de los términos acordados en la póliza como límites de su responsabilidad; el propio foro primario le concedió a Triple S, inicialmente, hasta el 1 de marzo de 2024 para presentar una moción dispositiva, —curso decisorio que ubica dentro de su discreción para manejar el caso—, sin que la parte apelante se opusiera a ello.[38]

---

[38] Véase entrada núm. 294 de SUMAC.

c.

Entonces, la parte apelante propone como error, que el TPI determinara que los daños que le causaron las demandadas no estuvieran cubiertos por la póliza emitida por Triple S, al presuntamente ser de naturaleza *intencional.* Además, esta parte le imputa al foro primario haber errado al no tomar en consideración que los daños reclamados estaban cubiertos en la póliza, bajo la sección de ofensas denominadas como *invasión a la privacidad o intimidad.*

Sobre el primero de los referidos temas, en su moción de sentencia sumaria Triple S citó la definición de ocurrencia (*ocurrence*) incluida en la póliza[39] como requisito para responder por una reclamación por daños a la propiedad (*property damage*) o al cuerpo (*body damage*). Sobre dicho primer concepto, adujo que el elemento clave para poder instar una reclamación bajo los términos incluidos en la póliza es que la ocurrencia fuera *accidental,* es decir, un suceso incierto. A partir de lo cual, arguyó que no era un accidente, bajo dicha definición, que seis perros en un apartamento provocaran ruidos, por lo que el daño era un resultado esperado, *ergo,* no un accidente cubierto por la póliza. En la misma línea aseveró que, el que los actos o daños no fueran accidentales, quedó demostrado las multas que le impusieron a las demandadas al violentar dos artículos del Reglamento del Condominio Lake Shore (donde ubicaba el apartamento de las demandadas), acerca de los ladridos de las mascotas. Como consecuencia, concluyó que resultaba de aplicación la cláusula de exclusión incluida en la póliza sobre *expected or intended injury.*[40]

Según ya habíamos citado, el TPI acogió tal teoría legal de Triple S, razonando que; "los **daños corporales** ocasionados a Pinto Lugo

---

[39] Ver nuestra nota al calce 27 para la definición *verbatim* de *ocurrence* en la póliza.
[40] Ver nuestra nota al calce 31, para la definición *verbatim* de *expected or intended* en la póliza.

están excluidos de la cubierta de responsabilidad pública por ser **esperados** por las aseguradas".[41] (Énfasis provisto). Es decir, el foro primario concluyó que operaba la exclusión contenida en la póliza referente a *daños corporales esperados,* señalando como prueba de ello, las intervenciones previas de la Junta de Directores del Condominio Lakeshore con las demandadas, por infracciones al Reglamento del Condominio acerca del ladrido de los perros. No coincidimos.

iii.

En la interpretación de las cláusulas de la póliza resaltadas en los párrafos que preceden, juzgamos esencial considerar la discusión que sobre los tales llevó a cabo nuestro Tribunal Supremo en *Maderas Tratadas v. Sun Alliance,* supra, y *PFZ Properties, Inc. v. General Accident Insurance,* 136 DPR 881, 904 (1994). En la primera de estas Opiniones, el Tribunal Supremo inició por advertir que inicialmente las pólizas incluían el término *accidente* en lugar de *ocurrencia,* pero dicho primer concepto presentaba problemas puesto que *resultaba extremadamente limitado al circunscribir su aplicación a un evento súbito o abrupto. Maderas Tratadas v. Sun Alliance,* supra, pág. 902-903. En la misma Opinión, se dijo lo siguiente sobre *ocurrence*:

> Este término se define en la póliza como "un *accidente,* **incluyendo la exposición continua o repetida a condiciones que resultan en daños personales**, daños a la propiedad ... **no anticipados ni intencionales** *desde el punto de vista del asegurado.*" *Maderas Tratadas v. Sun Alliance,* supra, pág.  (Énfasis provisto).

Continuando con la misma jurisprudencia, se añade que, "para efectos de la definición de *ocurrencia,* ello denota un incidente o evento *no planificado, no intencional, no anticipado, o imprevisto*". *Id.,* pág. 129. Por tanto, queda claro que **la conducta deliberada o**

---

[41] Apéndice del recurso de apelación, págs. 100-101.

**intencional** no constituye un "accidente" ni una "ocurrencia". *Id.* (Énfasis provisto).

Para propósitos de determinar si, en efecto, el suceso que da margen a los daños constituye un accidente, **es menester examinar el comportamiento que da base a la reclamación desde el punto de vista del asegurado**. El concepto *ocurrencia* no provee cubierta **por actos culposos e intencionales del propio asegurado**. *Id.*; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, pág, 904. (Énfasis provisto).

No obstante, **cabe distinguir entre la conducta intencional del asegurado y** <u>**aquellos daños físicos o daños a la propiedad que no fueron anticipados por éste**</u>, **ni tampoco tuvo la voluntad expresa de causarlos. Quiere esto decir que, independientemente de la voluntariedad atinente al comportamiento que trajo como consecuencia los daños,** <u>**lo determinante es auscultar si esas secuelas eran igualmente deseadas por el asegurado**</u>. *Maderas Tratadas v. Sun Alliance*, supra, pág. 904. (Énfasis y subrayado provistos).

Contrario a lo resuelto por el TPI, no podemos concluir que la tenencia de varios perros por parte de las demandadas, que ladraban, y por esto, causaban molestias a sus vecinos, fuera un acto intencional con el propósito o deseo de causarle daños a los apelantes. Nótese que, según la sexta determinación de hechos incontrovertidos incluidos en la Sentencia Sumaria Parcial[42], las señoras Álvarez Vélez y Conde Vidal *instalaron un aire acondicionado en su apartamento para amortiguar el ruido generado por sus mascotas*, conducta que no refleja la referida *voluntad expresa de causar daño*. Sobre lo mismo, sería un contrasentido presumir que, por un lado, las demandadas procuraran reducir los ruidos que generaban sus mascotas, pero, a la vez, desearan causar daño a la parte apelante con los ladridos de sus

---

[42] Apéndice del recurso de apelación, pág. 14.

perros. Bajo esta lógica, no es lo mismo tener conocimiento o reconocer el estorbo que puede causar una mascota, al deseo o intención de causar daño a un tercero a través de dichos animales.

Cabe sumar a lo anterior el dato plasmado por el TPI en su Sentencia Sumaria Parcial, a los efectos de que la codemandada Álvarez Vélez afirmó en su *Moción de sentencia sumaria parcial* que los animales **"le servían de apoyo emocional**, para lo que anejó una carta de un médico **donde se recomendaba la compañía de dichas mascotas"**.[43] Es decir, la prueba documental con la que contamos lo que tiende es a probar que el propósito de la tenencia de los perros para las demandadas era el beneficio emocional que extraían de la compañía de dichos animales, *ergo,* **el ruido que provocaban a los apelantes <u>era una "*consecuencia accidental*"</u>**. *PFZ Properties, Inc. v. General Accident Insurance,* pág. 905.

En este punto es esencial mencionar que nuestro Tribunal Supremo zanjó que "la presunción de que una persona desea las consecuencias de sus actos voluntarios, y que sea utilizada para determinar la responsabilidad de las consecuencias de un acto voluntario de un asegurado, no es aplicable a los términos en una póliza de seguro. La palabra intencional, para propósitos de la aplicación de cláusulas de exclusión de las pólizas de seguro, significa que una persona desea las consecuencias de su conducta o cree que dichas consecuencias son resultado substancialmente evidente de dicha conducta. *PFZ Properties, Inc. v. General Accident Insurance,* supra. Los hechos incontrovertidos con los que contamos no resultan en manera alguna suficientes para poder imputarle a las demandadas la intención de molestar a los apelantes con los ladridos de los perros, sino que los daños resultaban, reiteramos, en una *consecuencia accidental* del poseer las mascotas.

---

[43] *Id.*, pág. 29.

Por otro lado, como parte del acuerdo al que llegaron las partes para disponer del remedio interdictal, (que utilizó el TPI para llegar a las determinaciones de hechos de la Sentencia Enmendada), las demandadas **no admitieron haber causado un daño intencional a través de los animales, o siquiera que desearan las consecuencias de sus actos**.[44] Del referido acuerdo no se puede extraer o siquiera deducir intencionalidad o deseo de causar daño a los apelantes con el ladrido de los perros. Citando, una vez más a nuestro Tribunal Supremo en *PFZ Properties, Inc. v. General Accident Insurance,* supra*,* no se debe presumir que una persona desea las consecuencias de sus actos voluntarios.

Además, la actuación de la Junta de Directores del Condominio Lakeshore, al imponerle multas a las demandadas por el incumplimiento reglamentario sobre la tenencia y control de animales, responde o puede responder, al orden general que le competía mantener respecto a la generalidad de los miembros de la vecindad o residentes de tal lugar, lo que resulta insuficiente para contestar la interrogante puntual sobre si las demandadas actuaron intencionalmente o deseaban los daños ocasionados a los apelantes en particular. En este sentido, tal incumplimiento reglamentario por las demandadas no es sinónimo de intencionalidad hacia los apelantes en específico. Nótese que, para dilucidar la importante interrogante sobre si cabía activar la exclusión sobre *expected or intended injury* contenida en la póliza, esta fue la única prueba a la que hizo alusión el TPI para sostenerla, sin sopesar los demás asuntos que aquí discutimos en los párrafos que preceden.

Por último, merece acentuarse que **corresponde a la aseguradora el peso probatorio para evidenciar la aplicación de alguna exclusión**, *Rivera Matos v. ELA,* supra. En este caso

---

[44] Ver inciso 35 de la Sentencia Sumaria Parcial, apéndice del recurso de apelación, pág. 18.

correspondía a Triple S demostrar con prueba documental que las demandadas deseaban las consecuencias de su conducta, o que tuvieran la voluntad expresa de causar daño, para entonces estar en posición de reclamar que no cabía la causa de acción por motivo de la cláusula de exclusión esgrimida Sin embargo, en la lista de hechos incontrovertidos propuestos por Triple S en su moción de sentencia sumaria[45] notamos una total ausencia de documentación que sirviera para sostener su teoría sobre la intencionalidad de las demandadas, descansando por completo su argumento en las referidas multas expedidas por el Condominio Lake Shore, por *ruidos y molestias a los vecinos.*[46] La carencia de interrogatorios, deposiciones, admisiones o alguna otra prueba documental en la petición de sentencia sumaria instada por Triple S, que sirviera para sostener la intencionalidad de las demandadas en causar daños a la parte apelante, es notoria.

En definitiva, examinada la moción de sentencia sumaria presentada por Triple S, junto a las determinaciones de hechos incluidos en la Sentencia Enmendada apelada, concluimos que **no surge evidencia suficiente en derecho que sirva para adjudicar la intencionalidad** que, según la jurisprudencia discutida, activaría la cláusula de exclusión en la póliza. Es decir, habiendo examinado el comportamiento que dio base a la reclamación desde el punto de vista del asegurado, no hallamos prueba documental suficiente para concluir que los actos de las demandadas fueran deseados, constituyendo estos más bien consecuencias accidentales dentro de los confines de la póliza.

iv.

En el último señalamiento de error que nos quedaría por discutir, identificado como dos (2) en el recurso de apelación, se afirma que incidió el TPI al no reconocer determinar que los daños reclamados

---

[45] Ver Entrada Núm. 288 de SUMAC, pags. 5-8.
[46] *Id.*, pág. 17.

se encuentran dentro de los denominados privacidad/intimidad cubiertos por la póliza. A pesar de así afirmar, la misma parte también arguye que *no es necesario establecer que la cubierta para las reclamaciones presentadas están incluidas en la póliza.*[47]

En efecto, no juzgamos necesario detenernos en este señalamiento de error, por las siguientes razones. Primero, el asunto planteado **no** fue de los incluidos por Triple S en su moción de sentencia sumaria. Como ya discutimos, en la moción dispositiva aludida, Triple S se limitó a plantear dos asuntos: 1) que, desestimada la causa de acción contra su asegurada, procedía el mismo desenlace para la aseguradora; 2) que aplicaba una cláusula de exclusión establecida en la póliza, al no haber acontecido un *ocurrence*. Según es sabido, las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. *Meléndez González v. M. Cuebas, Inc.,* supra.

Segundo, en la Sentencia Enmendada que es objeto del recurso de apelación, el tribunal *a quo* se limitó a dilucidar los dos asuntos que planteó Triple S en su moción de sentencia sumaria, según aquí enumerados en el párrafo que precede. Es decir, el TPI adjudicó que: 1) aunque la asegurada lo era la señora Álvarez Vélez, la póliza incluía al cónyuge del asegurado, de manera que no emitir sentencia sumaria por haberse desestimado la causa de acción contra la asegurada, quedando su cónyuge; 2) que la póliza no ofrecía cubierta por lesiones corporales que fueran previsibles, y las alegadas en la demanda eran previsibles, pues las demandadas tenían conocimiento del estorbo que causaban sus mascotas.

Obsérvese que la mención de *lesiones corporales* en la Sentencia Enmendada es incidental al tema adjudicado sobre si había ocurrido o no una *ocurrencia.* De nuevo, el foro apelado solo adjudicó que "los

---

[47] Recurso de apelación, pág. 9.

*daños corporales* ocasionados a los apelantes estaban excluidos de la cubierta de responsabilidad pública **por ser esperados por las aseguradas**[48], aludiendo esto último al tema del *ocurrence*, ya discutido, lo que en modo alguno sugirió que cabía una exclusión por causa de no haber ocurrido *daños corporales*.

## IV. Parte dispositiva

Por los fundamentos que preceden, determinamos que incidió el foro apelado al emitir sentencia sumaria favorable a Triple S, por lo que revocamos la *Sentencia Enmendada* y ordenamos que continúen los procesos en armonía con lo aquí razonado.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[48] Apéndice del recurso de apelación, pág. 101.